[No. 1731. Decided July 17, 1895.]

THOMAS FLINT *et al., Appellants,* v. FRANKLIN P. LONG *et al., Respondents.*

### ADVERSE POSSESSION — COLOR OF TITLE.

Where land has been platted into lots by actually staking it out on the face of the earth, a deed purporting to convey certain of the lots is sufficient to constitute color of title for a bona fide entry, although the recorded plat of the lands may not include such lots within the bounds of the platted tract as described therein.

The fact that an entry has been made upon city lots under color of title, the land cleared, fenced and planted to shrubbery, and a house built thereon which had been occupied by the claimant and his tenants is sufficient to constitute adverse possession.

*Appeal from Superior Court, King County.*

*Preston & Albertson,* for appellants:

A deed gives color of title only to the land described in it, and even though it was intended that other land should be conveyed by it. Sedgwick & Wait, Trial of Title, § 768; Buswell, Limitations, § 254; Wood, Limitations, § 259; *Pope v. Hanmer,* 74 N. Y. 240; *Weaver v. Wilson,* 48 Ill. 125. Cases may be cited to the effect that where the owner of land undertakes to plat it, and through mistake stakes out the tract in a location owned by him different from that described in the paper plat, and afterwards conveys a lot designated by the plat number, the purchaser will take the lot staked out, *provided* the deed refers to monuments on the ground for a location of the lot. In such case the purchaser might with some plausibility claim color of title to the staked out lot. But there is no reference to stakes or monuments in any of the deeds offered by respondents. The only description of the premises from which they could be located is to be found in the recorded plat with reference to which the deeds were made and the description there given does not cover the parcel in dispute. As already decided by this court, " a deed conveying property by reference to a map or plat thereof adopts such map or plat as a part of such deed, and one purchasing thereunder becomes bound by the boundaries of the lot purchased as they appear on said plat or map." *Kenyon v. Knipe,* 2 Wash. 397, *Powers v. Jackson,* 50 Cal. 433; *Kelly v. Land Co.,* 4 Wash. 195; *Jones v. Johnston,* 18 How. 153; *Chapman v. Polack,* 11 Pac. 764.

*Greene & Turner,* for respondents:

" Whenever an instrument by apt words of transfer

from grantor to grantee . . . in form passes what purports to be the title, it gives color of title." *Hall v. Law*, 102 U. S. 461. Thus a quit claim deed from the grantor having no interest gives color of title. Sedgwick & Wait, Trial of Title, § 780; *Wells v. Iron Co.*, 47 N. H. 253. Color of title is a "writing upon its face professing to give title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used; a title that is imperfect but not so obviously so that it would be apparent to anyone not skilled in the law." Sedgwick & Wait, Trial of Title, § 762; *Gittens v. Lowry*, 15 Ga. 338; *Wright v. Mattison*, 18 How. 50.

The lot lines as surveyed, platted and staked upon the ground were controlling. They, and they only, showed conclusively where the intent of the platter placed the outlines and inlines of his addition, and it was the real lots in the real addition, and not shadowy and defective representation and description of them on the paper plat, that were bought and sold; the conveyances evidencing such purchase and sale, and describing by the plat, must be understood to refer, not only to the paper plat, but much more to the plat upon the ground. The map or paper plat was intended simply as a representation of the actual survey. Devlin, Deeds, § 1022; *O'Farrel v. Harney*, 51 Cal. 125; *Penry v. Richards*, 52 Cal. 496; *Foley v. McCarthy*, 157 Mass. 474; *Van Amburgh v. Randall*, 115 Mo. 607; 18 Am. & Eng. Enc. Law, 446.

The opinion of the court was delivered by

DUNBAR, J.—The plaintiffs and defendants in this case derive their respective claims of title from a common source, namely, one D. T. Wheeler and his wife. The land in controversy is a part of the tract of

"thirty acres off from the south side of the east 120 acres of what is known as the C. D. Boren Donation Claim" in the city of Seattle, of which D. T. Wheeler and wife were on the 7th day of December, 1870, seized and possessed in fee simple. Wheeler and wife on the 10th day of December, 1870, being still the owners of a certain five acres of said thirty acres, in which tract of five acres is included the parcel now in dispute, conveyed said five acres to one Benjamin Flint, which Flint afterwards duly conveyed to appellants. The record shows that said Wheeler and wife on December 7, 1870, conveyed ten acres out of the thirty acres above mentioned to one John Lawler and Margaret Kollock in undivided interests, and that this ten acres was on April 10, 1882, partitioned in severalty between these grantees. This ten acres abuts on the west boundary of the five acres deeded to appellants and does not overlap any part of the latter according to the description in the respective deeds. Lawler, however, in platting his part of the said ten acres staked it out on the ground, not according to the description of his deeds, but so as to include the west 102 feet of the five acres owned by appellants. The land in controversy is a part of this strip of 102 feet, and corresponds with lots 5 and 6 of block 4 of Lawler's addition, as the same were actually staked out on the ground. The description in the paper plat, however, follows the description of the Lawler deeds, and does not purport to cover any part of said strip of 102 feet. The respondent Long became the purchaser of lots 5 and 6 of block 4. of Lawler's Addition, so that the question is: Who is entitled to the parcel in dispute by reason of these conveyances? At least, that would be the question, if there was not any question of the statute of limitations in the case. Mary Mona-

smith is the tenant of respondent Franklin P. Long herein, and was made a party to this action, which is an action in ejectment. The defense of adverse possession for ten years prior to the commencement of the suit under said alleged color of title was set up by the respondents, and the view we take of this issue, renders unnecessary the discussion of any other propositions.

Conceding the necessity under the provisions of our statute, to show color of title on the part of the respondent in this case,—a question upon which we do not now pass,—it seems to us that such color of title was fairly shown. All that is necessary to be shown is that there was a proof of colorable title under which the entry or claim has been made in good faith. The land in question was purchased by the respondents and the platting on file merely represented the lots as staked out upon the ground, and a deed to certain lots purporting to convey land actually staked out upon the face of the earth to correspond with the deed, would certainly be a purchase and an entry thereunder, if such entry was made in good faith. It is but a prudent practice, and certainly a common one, when people are buying lots, to view the lots as actually staked out upon the face of the earth. Devlin on Deeds, § 1022, says: " The words on the face of a map of a town ' as laid out ' by a certain person, are equivalent to ' as surveyed ' by him, and embrace a reference to the monuments placed on the land by the surveyor." So that the pertinent question in this case is: Has there been an open, notorious, undisputed and adverse possession of the land in controversy by the respondent and his grantors for ten years immediately preceding the commencement of this action ? The court who tried the cause found as a fact that

the defendant Franklin P. Long and his grantors have been in actual, open, notorious and exclusive possession adverse to the plaintiffs and each of them, of every part and parcel of the land in question from and ever since the 23d day of May, 1883, until the day of the hearing and trial under color and claim of title adverse to the plaintiffs. This action was commenced August 10, 1893.

A careful investigation of all the testimony in this case leads us to the conclusion that the court was warranted in such finding. The testimony is too long and too much diversified to specially refer to it, but we do not think that we shall have to go to the extent that we did in *Bellingham Bay Land Co. v. Dibble*, 4 Wash. 767 (31 Pac. 30), to sustain this finding. It is true, there is some conflict in the testimony, and parties were introduced to testify that they had been upon these lands at the time testified to by the defendants' witnesses, and that such improvements as they testified to did not exist, but the parties who had procured these improvements made and had paid for them, and witnesses who made some of the improvements, testified in regard to the making of them, and to the time of the making of them. It appears from the testimony that during the winter of 1882 and the early spring of 1883, shortly after the purchase of these lots by Mrs. Malson, that she employed a man to clear the same — that he went upon the lots, cut down the timber that yet remained standing upon them, cut down the brush — of which it seems there was an abundance on the lots — and cleared the lots off, planting in the month of February a considerable portion of it to shrubbery, and that he built a rude fence around three sides of the land in dispute,

(testimony showing that the other side was inaccessible to stock on account of its roughness) — and from the character of work which was shown by these witnesses to have been done upon this land, the face and appearance of the ground must have been completely changed, so that notice would have been given to any one who saw the land that possession had been taken of the same, and improvements made thereon, which improvements would be inconsistent with any other theory than the theory of possession and ownership.

Shortly after this, and according to the testimony, about the 1st of September, 1883, a house was built upon this land, which house has been occupied by the respondent and his grantor or their tenants practically ever since it was built. It is true that this house was not a very pretentious one, being a board house with the boards running up and down, and a shingle roof, and, as the man testified who built it, from 20 to 24 feet long; but unpretentious as it was, it has been occupied all this time by families consisting of women and children, and the testimony is undisputed that since the fall of 1886 it has been occupied continuously by Mrs. Monasmith and her family, and that she has paid the rent, which from the testimony appears to have been from two to four dollars per month, to the respondent, or his agent, Mrs. Ross.

If the testimony of the witnesses for the defense be true, the possession in this case has not been of a doubtful character, but has been open and notorious, and the improvements made substantial, and while, as we before said, there is some conflict as to when the first improvements were made — namely, the clearing and the setting out of the shrubbery — yet, from a perusal of this testimony, we are not prepared to say

that the judge who saw the witnesses and heard them testify was not justified in reaching the conclusion which he did.

The judgment will, therefore, be affirmed.

SCOTT, ANDERS and GORDON, JJ., concur.

HOYT, C. J., dissents.