[No. 6979.   Decided February 11, 1908.]

WILLIAM JOHNSON, *Appellant*, v. HERBERT S. CONNER *et al.*,
*Respondents.*[1]

ADVERSE POSSESSION—ENTRY UNDER CLAIM OF RIGHT—HOSTILITY
OF POSSESSION.   One who enters upon land in good faith, supposing
it to be government land, with a view to acquiring title, may, upon
discovering his mistake, proceed to hold openly and notoriously in
hostility to the actual owner, so as to acquire title by adverse pos-
session in ten years thereafter.

SAME—EVIDENCE—NONPAYMENT OF TAXES—EFFECT.   The nonpay-
ment of taxes by one in adverse possession of land is insufficient in
itself to disprove an adverse holding clearly shown by other evidence.

SAME—EXTENT OF POSSESSION.   Adverse possession of an entire
tract is not shown where the evidence of adverse holding was con-
fined to a portion of the tract, and there was no such occupancy or
use thereof as manifested an intention to claim the balance.

PARTIES—ADDING NEW PARTIES—TRIAL—DISCRETION.   In an action
to quiet title, it is discretionary to deny an application by plaintiff,
made after resting and after the defendants had put in part of their
evidence, for leave to file a complaint in intervention on behalf of
one not a party, in order to litigate the validity of a deed not ques-
tioned theretofore on the trial.

CANCELLATION OF INSTRUMENTS—FRAUD OR MISTAKE—EVIDENCE.
A deed and lease will not be set aside for fraud or mistake unless
the evidence is clear and convincing.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered February 20, 1907, upon find-
ings in favor of the defendants, after a trial on the merits
before the court without a jury, in an action to quiet title.
Affirmed.

*James B. Reavis* and *Osborne V. Willson,* for appellant.

*McBride, Stratton & Dalton, George Donworth,* and *Bogle
& Spooner,* for respondents.

ROOT, J.—In the year 1883, appellant established a home
upon certain lands abutting the shores of Smith's Cove, in

[1]Reported in 93 Pac. 914.

King county. These lands had been conveyed by the government to one Dr. Smith some years before, and he was the owner thereof at the time of the entry by appellant. The latter, however, claims that he supposed the land to belong to the government and to be subject to entry, and that he went upon the same with the intention of acquiring the title thereto under the land laws of the government. He continued to reside upon said premises until the commencement of the present suit in 1907.

In November, 1905, appellant, apparently without consideration and in trust, executed a quitclaim deed to a portion of these premises to one Czerney, who subsequently executed a quitclaim deed for the same to one Thompson for the benefit of all of these respondents. On the 26th of July, 1906, appellant and wife signed an instrument, also signed by Herbert S. Conner, wherein and whereby the latter assumed to let and lease unto appellant and wife a portion of the lands involved in this litigation. It is urged by respondents that the purpose of this lease and this quitclaim deed was to show a waiver by appellant of any claim to the premises covered by said instruments, and to quiet the title in respondents. Appellant claims that said lease was obtained from him by misrepresentation and fraud, that the deed was likewise obtained, and that he was incompetent to transact business when said instruments were executed, and did not realize or understand their purpose and effect. Respondents claim that $25 was paid to Czerney for the quitclaim deed which he executed. The latter disputes this. The trial court found in favor of respondents upon all the material issues, and entered a decree quieting title to the premises in them. From this decree the present appeal is prosecuted.

Appellant does not claim to have entered the premises under color of title, but maintains that his entry was under a claim of right. He testified that he believed, at the time he entered the land, that it was government land and subject to

entry, and that he located thereupon with the intention of taking it under the land laws of the United States government. Several witnesses, as to the acts and statements of the plaintiff during his early occupancy of the land, strongly corroborate him, and we do not find any evidence tending to show that he did not so believe and intend at that time. Some time after appellant located upon this land, he ascertained that the same was owned or claimed by Dr. Smith. It is impossible to tell from the evidence how long this was after his entry. It was evidently within a year or two. Dr. Smith testifies that he had some talk with appellant about the matter and gave him permission to stay there without charging him any rent. He says, however, that to the best of his recollection, the appellant occasionally brought eggs to the family, which he took to be payment on the rent.

Appellant denies positively that he ever agreed to pay any rent, or that he ever did pay any rent, or that he was a tenant of Dr. Smith, and says that the eggs were delivered to Dr. Smith and family merely as a neighborly courtesy, and especially as a return of courtesy on the part of the doctor's family in sending him berries, fish, etc. Appellant was at this time living in a building left upon the premises by persons who had theretofore been "logging off" the timber. The little evidence shown by the record as to paying rent is indefinite and does not indicate whether it was for the premises or for the use of the building, it appearing that there were several buildings or shacks upon the land and that considerable bartering, buying, selling, and leasing of these took place between Smith, plaintiff, and various other persons without much or any reference to the ownership of the land upon which the buildings stood. Whatever may have been the fact as to the rent or as to appellant's possession being permissive on the part of Dr. Smith, it is evident, that appellant's occupancy of the land soon after became hostile to the claim of Dr. Smith, and adverse and exclusive as to him and every-

body; that appellant proceeded openly and notoriously to exercise exclusive dominion over the premises occupied, and so continued to do for over ten years. He cultivated patches of garden, built some fences, engaged in the business of raising chickens, ducks, fancy dogs, rabbits, Belgian hares, and Australian rats, and kept boats for hire. He made his living there. He and numerous neighbors testified that he claimed the premises as his own and drove off people who came thereupon to hunt, camp, pick berries, locate buildings, or for other purposes. Some of the old-time neighbors testified that he told them he was holding the premises adversely and would have perfect title after ten years. Numerous witnesses testified that the place was well known throughout the community as "Dog Johnson's place."

While an entry upon the land of another, under the supposition and belief that it is government land and that the party entering may hold the same as such, may not of itself constitute an entry under claim of right, yet where such an entry is made in good faith, and the entryman upon discovering his mistake proceeds to openly and notoriously hold the same adversely and in hostility to the title of the actual owner or claimant, we think this constitutes an adverse holding and disseizin under a claim of right as understood in this state. *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199; *Flint v. Long*, 12 Wash. 342, 41 Pac. 49; *Bowers v. Ledgerwood*, 25 Wash. 14, 64 Pac. 936; *Hesser v. Siepmann*, 35 Wash. 14, 76 Pac. 295; *Mather v. Walsh*, 107 Mo. 121, 17 S. W. 755; *Francoeur v. Newhouse*, 43 Fed. 236; 1 Cyc. 1028.

The evidence shows by a clear preponderance that appellant held actual, uninterrupted, and notorious possession of a portion of these premises adversely to everybody for a period of ten years, after he learned of Dr. Smith's claim, and after he had decided to hold adversely thereto, and prior to the date of the quitclaim deed to Czerney. It is urged that he paid no taxes. The nonpayment of taxes, while evidence against

the holding being adverse, is nevertheless insufficient in itself to prove that the holding was not adverse when such adverse holding is clearly shown by other competent evidence. Appellant would not be expected to pay taxes as long as he thought it was government land. That he did not pay taxes afterwards is merely evidence as to intention, which is readily overcome by the other positive evidence in the case. It is not necessary that the claim of right shall continue through the statutory period, the entry being under such claim and the possession being afterwards maintained openly and notoriously in hostility to the title of the opposing claimants or real owners. After the occupant has learned of such owner's claim or title, the possession is adverse and becomes a bar to a recovery by the owner at the expiration of the ten-year period. We think, under the evidence and facts appearing in this record, that appellant conclusively shows ten years open and notorious adverse possession of these premises prior to the date of the Czerney deed and Conner lease.

It next becomes necessary to ascertain the amount of the respondents' land to which appellant thus established adverse possession, or rather to ascertain whether or not of such respondents' lands he obtained title to any other than those covered by the Conner lease and Czerney quitclaim deed. We think the evidence fails to show that he did. In this action he is claiming between thirty and forty acres of land, but we do not think that the evidence establishes an adverse claim to, and holding of, all this or any portion of respondents' lands other than those covered by the Conner lease and Czerney deed. Of course, it is not necessary for a person claiming a certain tract of land adversely to prove that he has actually occupied, used, improved, or inclosed all of said tract. But it must appear that he openly and notoriously claimed the entire tract and that his possession, use, or improvement of a portion thereof was intended to hold, not merely that particular portion, but the whole of the entire tract. We do not think

that the evidence in this case shows such occupancy, claim, use, or improvement as manifested an intention to hold any portion of the land now claimed other than that covered by said lease and quitclaim deed, which we will now consider.

The trial court apparently entertained the view that the validity of the deed to Czerney could not be questioned in this action, for the reason that Czerney was not made a party to this action. Attorneys for appellant seem not to have seriously questioned this view. After appellant had put in all of his evidence and rested his case, and after respondents had introduced a portion of their evidence, the attorneys for appellant asked to file a complaint in intervention on the part of the said Czerney, under which it would have been possible to go into all questions affecting the validity of the said quitclaim deeds. The trial court denied this application upon the ground that it came too late. The writer of this opinion thinks it might have been well to have granted this application, but the majority of the court feel that the trial court acted well within its discretion and committed no error. We are therefore confined to the evidence now before us. Upon the evidence touching the question of fraud, misrepresentation, and incompetency of appellant to make such lease and deed, the trial court found against appellant. There was much conflict in this evidence. Remembering that written instruments should be set aside for fraud or mistake only where the evidence is clear and convincing, and bearing in mind that the trial judge had the advantage of seeing and hearing the witnesses upon the stand, we are not justified from this record in setting aside his conclusion.

The judgment is therefore affirmed.

HADLEY, C. J., RUDKIN, and DUNBAR, JJ., concur.

MOUNT and CROW, JJ., concur in the result.