[No. 14731. Department Two. June 24, 1918.]

C. SCHMITZ, *Appellant,* v. JOSEPH KLEE et al., *Respondents.*[1]

PUBLIC LANDS—PATENTS—BOUNDARIES—SHORE LINES. The government meander of a lake is not a boundary line, and the patent conveys to the actual shore line so as to include a peninsula that was cut off and left outside the meander.

ADVERSE POSSESSION—PRESUMPTIONS. In the absence of proof, it will be presumed that possession was permissive and not adverse to the owners.

SAME—COLOR OF TITLE—DESCRIPTION OF PROPERTY. An instrument conveying "all interest and title" that the grantors "may have in the piece known as the point" in Lake S., cannot operate as color of title since it does not sufficiently describe any property without the aid of parol evidence.

SAME—HOSTILE POSSESSION. An entry is not shown to be hostile and the possession thereunder will therefore be presumed to be permissive, where there was no open assertion of hostile title and it appears that prior to taking possession, upon consultation with the owner, her son-in-law, the occupant was advised that she could live

[1] Reported in 173 Pac. 1026.

on the land as long as she wished and during the winters she spent a large part of her time with her daughter and son-in-law on the adjoining tract.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 17, 1917, upon findings in favor of the defendants, in an action to quiet title, tried to the court. Affirmed.

*E. B. Brockway* and *Michael Dowd,* for appellant.

*Fitch, Jacobs & Arntson,* for respondents.

HOLCOMB, J.—Andrew F. Byrd entered and filed upon a donation claim in section 34, township 20, range 2 east, W. M. Before patent issued, Mr. Byrd died, and in the probate of his estate the claim was sold and described as,

"A. F. Byrd's donation land claim, situated in Pierce county, W. T., and particularly described and bounded as follows: Beginning at a stake standing on the prairie northwesterly of the mills and dwelling house situated on said claim and running thence south 160 rods to a lake; thence east 160 rods to a stake near a white oak tree; thence north 160 rods; thence west 160 rods to the place of beginning; the same being the donation land claim described in the notification No. 1076, now on file in the office of the registrar of the land office of Washington Territory, at Olympia, and contains 160 acres of ground, more or less."

This description would cut off a peninsula (the property in dispute), extending south from the southern boundary into Lake Steilacoom. Defendants trace their chain of alleged title to this peninsula through the above description. The government made a meander survey of the shore of the lake which also cut off the peninsula, leaving the peninsula unsurveyed ground as far as appears. In 1871, the United States government issued a patent to the heirs at law of Andrew F. Byrd, deceased, describing the claim by metes and

bounds, and also referring to it as notification No. 1076, claim No. 42. The exact description contained in the notification certificate and claim No. 42 nowhere appears in the record, unless we may presume it to be the same as contained in the patent. A plat of the donation claim and the disputed peninsula is as follows:

In 1890, Frederick Meyer, Frederick Nachtsheim, and Joseph Klee, owners of the Andrew F. Byrd do-

nation claim, quitclaimed to the United States for the purpose of having the patent of 1871 canceled and a corrected patent of the claim issued. In this corrected patent of 1890, the United States issued it to the heirs at law of Andrew F. Byrd, deceased, described as notification No. 1076, claim No. 42, being bounded and described as follows, to wit:

"Beginning at a point four chains and 65 links west of the S. E. corner of the N. E. ¼ Sec. 34, and running thence north 30 chains and 18 links, thence west 43 chains and 93 links, thence south 39 chains and 20 links to a point on Lake Steilacoom, thence north 83° east 6 chains, thence north 28° west 7 chains and 90 links; thence north 56° 30′ east 5 chains, thence north 89° 15′ east 6 chains and 20 links; thence north 3° 30′ east 1 ch. 70 lks; thence north 21° east 2 chains; thence south 71° east 1 ch. 20 lks; thence south 12° west 3 ch. 50 lks; thence south 3° 30′ east 5 ch. 50 lks; thence south 20° east 2 ch. 10 lks; thence south 33° east 2 ch. 30 lks; thence south 10° east 1 ch; thence east 26 ch. 74 lks. and thence north 9 ch. 2 lks. to place of beginning, containing 158 79-100 acres."

It is apparent, in comparing these calls with the foregoing plat, that this description does not include the disputed peninsula. In 1904, by subsequent conveyance, respondents claim to be the sole owners of that portion of the Byrd donation claim containing 30.70 acres, bounding the disputed peninsula on the north.

Respondents are the daughter and the son-in-law of appellant and seem to have been in friendly relation until this suit. Prior to 1900, appellant lived about seven years without paying rent, in a little house called the "Mill House," situated on the Byrd donation claim, having been moved there by respondent Joseph Klee. About 1885 or 1888, one Meyers became the owner of a portion of the Byrd donation claim which did not bound the disputed peninsula; nevertheless he went into pos-

session of the peninsula, built a house (which was occupied by his daughter), and fenced off the peninsula approximately on the line of the meander call. Meyers remained in possession until he sold to one Hill, who sold to appellant by the following instrument:

"Tacoma, Washington, May 5, 1900.
"This agreement made this day and year, May 5, 1900, Edward C. Hill and wife of the first part and C. Schmitz of the second part; that the parties of the first part for and in consideration of $100 paid by the party of the second part, or Mrs. C. Smith, the receipt whereof is hereby acknowledged, do hereby remise, release and forever sell unto the party of the second part, the following improvements and all interest and title the parties of the first part may have in the piece, known as the point in Steilacoom Lake; also one four-room house, one barn, chicken house, well and all fences thereon."

Appellant, a widow, with her son, Adolph, immediately went into possession of the peninsula, and the respondents at no time prior to 1916 attempted to oust either Meyers, Hill, or appellant. Prior to the purchase from Hill, appellant consulted Joseph Klee, one of the respondents, in regard to the purchase, and she was advised by him that she could live there as long as she wished, or as long as she lived, as far as he was concerned. In 1905, appellant told Joseph Klee that one Pease had offered her $500 for the place; whereupon he told her that he would give her the same for it. In his testimony he stated it was for the improvements and to get her off the place.

It is not shown that any one paid taxes on this disputed peninsula. During the summer of 1916, Klee was informed by some government officers that he owned the peninsula by virtue of the description in the patent. He told Adolph Schmitz that he would have to pay rent for his cattle running on the place.

Soon thereafter Klee built a house on the peninsula. Appellant commenced this action to establish her title. The trial court held that appellant's possession was subservient to respondents and really their possession, and not adverse to them. Upon this ground, judgment was entered quieting title in respondents.

Appellant assigns as errors: The refusal of the court to give findings of fact Nos. 1 to 14, and conclusions of law Nos. 1 to 3, proposed by plaintiff; the giving by the court of findings of fact Nos. 1, 3, 4, 5, 8, 9, and 10, and conclusions of law Nos. 1 to 6, proposed by defendants; and the entry by the court of judgment herein dismissing plaintiff's action, holding that her claim was not good and not adverse, and quieting title against any claim of the plaintiff. These assignments, involving the question of title by adverse possession, or otherwise, of the disputed peninsula, may be discussed *in toto*.

Appellant contends that, under the United States laws governing donation claims, the probate proceeding (being prior to the issuance of patent) was ineffectual to pass title or change the status of the Byrd donation claim, and that the subsequent issuance of the patent by the United States to the heirs of Andrew F. Byrd vested title in such "heirs" rather than in the grantees of his administrator; and that for this reason, if for no other, the legal title (except as affected by adverse possession) still remains in the Byrd heirs.

If we should hold that appellant's contention is correct, then her claim of adverse possession against the heirs of Andrew F. Byrd would have foundation. The quitclaim deed by Klee and Nachtsheim to the government shows that it was given for the purpose of correcting a description in the former patent. It is customary for the United States government to issue its

patent to the heirs of a deceased entryman and leave it to the state courts to determine who are the heirs. It cannot be said that the granting of the patents to the heirs of Andrew F. Byrd, deceased, in these instances deprived the respondents of that portion of the donation claim bounding the peninsula on the north. Although the patents, by their description, do not specifically include the disputed peninsula, it is plain that the land on the north adjoining this peninsula becomes the upland abutting the same. If the peninsula is not a part of the donation claim it remains government land which cannot be acquired by adverse possession. *Slaght v. Northern Pac. R. Co.,* 39 Wash. 576, 81 Pac. 1062. The original meander line cut off the peninsula, leaving it outside the meander. It is the policy of the government not to assert title to such tracts, and to hold that the title passes to the abutting owners as though the land were included within the meander line. *Hardin v. Jordan,* 140 U. S. 371; *Mitchell v. Smale,* 140 U. S. 406. In the last case, Justice Bradley, writing the opinion, said:

"It has been decided again and again that the meander line is not a boundary, but that the body of water whose margin is meandered is the true boundary. *Railroad Co. v. Schurmeir,* 7 Wall. 272; *Jefferis v. East Omaha Land Co.,* 134 U. S. 178; *Middleton v. Pritchard,* 3 Scam. 510; *Canal Trustees v. Haven,* 5 Gilm. 548, 558; *Houck v. Yates,* 82 Ill. 179; *Fuller v. Dauphin,* 124 Ill. 542; *Boorman v. Sunnuchs,* 42 Wis. 235; *Pere Marquette Boom Co. v. Adams,* 44 Mich. 403; *Clute v. Fisher,* 65 Mich. 48; *Ridgeway v. Ludlow,* 58 Ind. 249; *Kraut v. Crawford,* 18 Iowa 549; *Forsyth v. Smale,* 7 Bissell, 201. The case last cited, *Forsyth v. Smale,* presented the very case of a tongue of land projecting beyond the meander line into Lake George, a small lake in Indiana, situated to the east of Wolf lake and connected therewith. It is cited and commented on in the opinion in *Hardin v. Jordan.* In conclusion,

our view on this part of the case is that the patent to
De Witt conveyed, and the plaintiff is entitled to, all
of the fractional S. W. quarter of section 20 from its
northern boundary line extending southwardly to the
actual water line of the lake, wherever that may be,
with the riparian rights incident to such position.''

Appellant contends that Meyers, Hill and she each
held adversely, and that she at least held under claim
of right and color of title. There is no proof that
Meyers and Hill held adversely, and it will be pre-
sumed that it was permissive and the possession of the
owners. *Peoples Sav. Bank v. Bufford,* 90 Wash. 204,
155 Pac. 1068; *Skansi v. Novak,* 84 Wash. 39, 146 Pac.
160.

Was appellant's possession adverse or held under
claim of right and color of title? She testified that
she had a paper from Hill (the instrument above set
forth) but did not know what was in it, and that Hill
did not say that he owned the property. An instru-
ment, in order to operate as color of title, must pur-
port to convey title to the grantee or to those with
whom he is in privity, and must describe and purport
to convey the land in controversy; it cannot be aided
by parol evidence. *Converse v. Calumet River R. Co.,*
195 Ill. 204, 62 N. E. 887. The instrument which ap-
pellant received from Hill does not purport to grant
any described property except the interest and title
the first party may have in the piece known as the
point in Steilacoom lake, which would have to be aided
by parol evidence as to the definite piece intended to
be conveyed. We cannot hold that this instrument is
color of title.

Has appellant shown that her entry as against re-
spondents was hostile? She spent a large part of her
time, particularly the winters, at respondents' home.
There must be some open assertion of hostile title to
the property, notice of which must be brought home to

the owners of the land. *Collins v. Colleran,* 86 Minn. 199, 90 N. Y. 364.

In *Dunham v. Townsend,* 118 N. Y. 281, 23 N. E. 367, it was said:

"During her son's occupation of this part of the farm, Mrs. McGowan lived at her homestead at McGowan's Pass, . . . She visited her son frequently at the dwelling-house on the farm, and there was constant communication between them. The objection is made that possession of the farm by Mrs. McGowan was not shown. We think the evidence sufficiently established possession of the land in Mrs. McGowan. The relations shown to exist between the mother and her son are entirely inconsistent with the claim that the son's possession was adverse to his mother's title, and show that he held under her and subordinate to her rights."

The entry must be hostile or it will be presumed permissive. *Bellingham Bay Land Co. v. Dibble,* 4 Wash. 764, 31 Pac. 30; *Blake v. Shriver,* 27 Wash. 593, 68 Pac. 330; *Port Townsend v. Lewis,* 34 Wash. 413, 75 Pac. 982; *Yesler Estate v. Holmes,* 39 Wash. 34, 80 Pac. 851; *Delacey v. Commercial Trust Co.,* 51 Wash. 542, 99 Pac. 574, 130 Am. St. 1112; *McNaught-Collins Imp. Co. v. May,* 52 Wash. 632, 101 Pac. 237; *Northern Pac. R. Co. v. Devine,* 53 Wash. 241, 101 Pac. 841; *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160; *O'Donnell v. McCool,* 89 Wash. 537, 154 Pac. 1090; *Peoples Sav. Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068.

Although appellant was in open, notorious possession for the statutory period, it does not appear that she was holding adversely to respondents, no matter whether she intended to hold so against the Byrd heirs or the government.

We think the trial court was right in his judgment, and the same will be affirmed.

MAIN, C. J., CHADWICK, and MOUNT, JJ., concur.