[No. 846-3.   Division Three.   April 26, 1974.]

GARDENSPOT RANCH, INC., et al., Respondents, v. MAXWELL R. BAKER et al., Appellants.

*Harvey W. Clarke* of *MacGillivray, Jones, Clarke, Schiffner & Johnson,* for appellants.

*Robert D. Skidmore,* for respondents.

GREEN, C.J.—Plaintiff, Gardenspot Ranch, Inc., brought this action to quiet fee title in itself to 40 acres of land in Stevens County, described as the "NW ¼ of the NE ¼ of Section 20, Township 30 North, Range 42 E.W.M.," subject only to the interests of plaintiff, Kedric and Ann Baker, his wife, as contract purchasers. The defendants, Maxwell R. and Lucille Baker, his wife, deny plaintiffs' claim to the property and assert that fee title should be quieted in themselves. Defendants appeal from a decree in favor of plaintiffs, assigning error to the findings of fact and conclusions of law.

Section 20 was originally owned by Deer Park Lumber Company. On November 1, 1938, Deer Park Lumber Company, by warranty deed, transferred

> That portion of Section 20 . . . which lies West of the Summit of the range of hills which run approximately North and South, a little to the East of the West tier of forties, approximately 200 acres.

to Carl Bauer. On January 19, 1942, North Columbia Co., a successor to Deer Park Lumber, by warranty deed transferred

> all except that portion which lies West of the summit of the range of hills which run approximately north and south a little to the east of the west tier of forties, approximately two hundred (200) acres, of Section Twenty (20); . . .

to John G. Escure. Except as noted later, the chain of title emanating from Bauer and Escure failed to adopt the description used by Deer Park Lumber and North Columbia.

Defendants' claim of title is derived through a chain of deeds originating with Bauer. On January 21, 1942, Bauer transferred the following property in section 20:

> The North one-half (N ½) of the Northwest quarter (NW ¼ and the Southwest quarter (SW ¼) of the

Northwest quarter (NW ¼) and the West one-half (W ½) of the Southwest quarter (SW ¼) of Section Twenty (20), . . .

to Bertha Schuster. This description will hereinafter be called the "five 40's" because it consists of the west tier of 40's in section 20 plus the NE ¼ of the NW ¼—a total area of 200 acres. Warranty deeds containing this description were thereafter executed as follows:

Bertha Schuster to Thomas Carlson — September 4, 1946.
Thomas Carlson to Murry Findley — May 10, 1948.
Murry Findley to defendants Baker — November 5, 1951.

This chain of title also contains three quitclaim deeds to property described as

That portion of Section 20 . . . which lies west of the summit of the range of hills which run approximately north and south, a little to the east of the west tier of forties, containing approximately 200 acres.

*i.e.,* the property initially described in the deed from Deer Park Lumber to Bauer. These quitclaim deeds are as follows:

Bauer to Carlson — July 26, 1948.
North Columbia to defendants Baker — September 21, 1955.
Findley to defendants Baker — September 24, 1955.

The record does not disclose a similar quitclaim deed from Carlson to Findley. Consequently, Findley held title only to the "five forties" conveyed to defendants on November 5, 1951, and defendants Baker acquired nothing under Findley's quitclaim deed of September 24, 1955. As a result, defendants' standing to claim title to the "disputed 40" is highly questionable.

Plaintiffs' claim of title is derived from a chain of deeds originating with Escure. On July 16, 1948, Escure transferred by warranty deed

the E½ and the E½ of SW ¼ and the SE ¼ of NW ¼ of Section 20, . . .

to Chris J. Lucht and wife. Prior thereto, on June 8, 1948, Escure by quitclaim deed relinquished all interest in the NE ¼ of NW ¼ of section 20 (one of the five 40's). Thereafter, on September 20, 1948, Carlsons conveyed to Escure by quitclaim deed all of their interest to the SE ¼ of the NW ¼ and the E ½ of the SW ¼ of section 20 (includes "disputed 40"), i.e., the property conveyed by Escure to Lucht. On December 28, 1948, Luchts by warranty deed conveyed to plaintiff, Gardenspot Ranch, Inc., the property described in the Escure-Lucht deed. Subsequently, on March 3, 1950, Escure conveyed by quitclaim deed to plaintiff, Gardenspot,

> all except that portion which lies West of the summit of the range of hills which run approximately North and South a little to the East of the West tier of forties, approximately 200 acres, of Section 20.

The testimony shows that Gardenspot took possession of the disputed 40 acres in 1949 by constructing a 4-wire barbed wire fence along the east and south boundary line of the "disputed 40" and thereafter pastured 300 to 350 head of cattle on it along with land located in the adjoining section to the north. The southwest corner of the "disputed 40" was marked by an iron stake that was pointed out by Carlson to Findley in 1948 as being the east boundary of Carlson's property which was being purchased by Findley. Findley indicated the same stake as the boundary when he sold to defendants. The fence was maintained and in existence when Gardenspot sold the "disputed 40" and other land on contract to plaintiffs Baker in 1965. Plaintiffs paid taxes on the "disputed 40" beginning in 1949 and each year thereafter.

The evidence shows defendants took possession of the "five 40's" in 1952 and neither they nor their predecessors in title objected to the construction or maintenance of the fence by Gardenspot or to the use of the land by Gardenspot. The first objection occurred after Gardenspot sold the "disputed 40" to plaintiffs Baker in 1965.

The trial court found that (1) the initial deeds by Deer

Park Lumber and North Columbia were ambiguous; (2) the subsequent deeds in defendants' line of title using the "five 40's" or 200-acre description, plus Carlson's pointing out to Findley of the east boundary of his ownership at the time of sale to Findley and the lack of claim by them to any other property in section 20 constituted an interpretation of the ambiguous deed from Deer Park Lumber as conveying only the "five 40's" or 200 acres; (3) such intent or interpretation is supported by the description contained in the deeds in plaintiffs' line of title and by the exchange of deeds between Escure and Carlson; and (4) Gardenspot purchased the "disputed 40" in good faith for value from Lucht and was in actual, open and notorious possession under claim and color of title made in good faith. Based upon these findings, a decree was entered quieting title in plaintiffs.

Defendants claim the trial court committed two basic errors: (1) the deeds from Deer Park Lumber and North Columbia should not have been held ambiguous or indefinite; and (2) plaintiffs are not entitled to ownership based upon adverse possession under claim and color of title as provided in RCW 7.28.070.

We will first discuss the second claimed error. The trial court found:

## VI.

That by said warranty deed dated December 29, 1948 from Chris J. Lucht et ux. to Gardenspot Ranch, Inc., a corporation filed for record January 15, 1949, in Book 137 of Deeds, page 135, Plaintiff's Ex. No. 12, the said grantee, Gardenspot Ranch, Inc. purchased said NW ¼ NE ¼ Section 20 in good faith and for value; that at all times from the year 1949 through 1964, the said Gardenspot Ranch, Inc. was in actual, open and notorious possession of said NW ¼ of NE ¼ of Section 20, Twp. 30, Range 42, E.W.M. under claim and color of title, made in good faith; that during said period, the defendants and their predecessors in title made no claim of ownership of said property, and that no use of said property was made by defendants or any other persons.

In our view, this finding is supported by substantial evidence.

■ RCW 7.28.070 provides:

Every person in actual, open and notorious posession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section.

The requirements for color of titles as used in this statute were outlined in *Scramlin v. Warner,* 69 Wn.2d 6, 9-10, 416 P.2d 699 (1966):

In *Basset v. Spokane,* 98 Wash. 654, 656, 168 Pac. 478 (1917), color of title has been defined as follows:
Color of title is that which is a semblance or appearance of title, but is not title in fact nor in law. A claim to property under the terms of some conveyance, however incompetent to carry or pass the title, is strictly color of title. [Citing cases.]
This definition was amplified in *Schmitz v. Klee,* 103 Wash. 9, 16, 173 Pac. 1026 (1918):
An instrument, in order to operate as color of title, must purport to convey title to the grantee or to those with whom he is in privity, *and must describe and purport to convey the land in controversy*; it cannot be aided by parol evidence. (Italics ours.)
In *Heikkinen v. Hansen,* 57 Wn.2d 840, 360 P.2d 147 (1961), the court said: "One may not claim property under color of title when the *property is not described in the deed.*" (Italics ours.)

As the trial court found, the deed from Lucht to Gardenspot dated December 28, 1948, includes the "disputed 40" and thereby created color of title to it in Gardenspot.

Defendants contend plaintiffs' claim under color of title is not valid because the good faith requirement of RCW 7.28.070 is not satisfied. In essence, defendants argue that Gardenspot was on notice that the deed from North Columbia to Escure used the "summit of the hills" description whereas the deed from Escure to Lucht to Gardenspot did not. As a result, defendants contend that Gardenspot should have made inquiry to determine whether the "summit of the hills" description was the same as the particularized description in the Escure-Lucht-Gardenspot deeds. Had this inquiry been made, it is argued, plaintiffs would have discovered that the "disputed 40" was never conveyed by North Columbia to Lucht, but rather, was conveyed by Deer Park to Bauer and thereby into defendants' line of title. Therefore, defendants assert plaintiffs' claim by color of title cannot be in good faith. If these were the only circumstances bearing upon good faith, this position might have merit. However, in light of all the circumstances, we decline to accept defendants' argument.

What was the state of the record title to section 20 when Gardenspot received its deed from Lucht? Bauer in 1942 and Escure in 1948, the only two grantees of the common grantor of section 20, abandoned the "summit of the hills" description. The line of deeds from Bauer to Schuster (1946) to Carlson (1948) used the "five 40's" or 200-acre description. A quitclaim deed from Bauer to Carlson on July 26, 1948, contained the "summit of the hills" description. Immediately prior thereto, Escure quitclaimed his interest in the NE ¼ NW ¼ (one of the "five 40's") to Carlson. On September 20, 1948, Carlson quitclaimed all of his interest in the SE ¼ NW ¼ and the E ½ SW ¼ of section 20 (all east or south of the "five 40's") to Escure and thereafter the deeds from Escure to Lucht to Gardenspot in 1948 described the E ½ SW ¼, the SE ¼ NW ¼ and the E ½ (includes "disputed 40") of section 20. Gardenspot, viewing this state of the title alone, must be found in good faith at the time it received the deed from Lucht absent testimony to the contrary.

■ However, the record further supports plaintiffs' claim to good faith. Carlson in pointing out the boundaries to Findley excluded the "disputed 40" from his ownership. Findley testified that all he owned or conveyed to defendants was the "five 40's" or 200 acres. Defendants and their predecessors in title knew or should have known that Gardenspot fenced and pastured cattle on the property. Furthermore, Gardenspot paid the taxes on the "disputed 40" continuously without objection from defendants or their predecessors until 1965. As a matter of fact, in 1953 Gardenspot and defendants entered into a fencing agreement that connected defendants' fence to Gardenspot's fence on the south border of the "disputed 40." Notwithstanding, defendants made no claim to the property until 1965. We find substantial evidence to support the trial court's finding of fact No. 6 and it will not be disturbed.

In view of our holding, we do not reach the question of whether the trial court erred in finding the "summit of the hills" description ambiguous.

Judgment affirmed.

MUNSON and McINTURFF, JJ., concur.