139 P.3d 419 (2006)
134 Wash.App. 349
Margaret R. CAMPBELL, a married person but on behalf of her separate estate; Respondent, and
Timothy J. Taylor and Laura Lynn Taylor, husband and wife; Jon E. Steiner and Ruth V. Steiner, husband and wife; Ruth A. Steiner, a single person, Plaintiffs,
v.
William G. REED, Jr. and Victoria Reed, husband and wife, and the marital community composed thereof, Appellants.
William G. Reed, Jr. and Victoria Reed, husband and wife, and the marital community composed thereof, Third-Party Plaintiffs,
v.
Charles W. Gunstone, Jr., et al., a Washington corporation, Third-Party Defendants.
No. 33395-3-II.
Court of Appeals of Washington, Division 2.
August 1, 2006.
*420 Michael Dennis Dwyer, Michael Barr King, Lane Powell PC, Seattle, WA, for Appellant.
J. Anthony Hoare, Seattle, WA, for Respondent.
Keith E. Moxon, Buck & Gordon LLP, Seattle WA, for Plaintiff Gunstone.
ARMSTRONG, J.
¶ 1 Margaret Campbell and William Reed have owned adjoining parcels of property on Discovery Bay for a number of years. When a recent survey revealed that the property Campbell thought she owned was actually within Reed's legal description, Campbell sued to quiet title on theories of (1) mutual recognition and acquiescence; (2) payment of taxes under color of title; and (3) adverse possession. Both parties moved for summary judgment; the trial court granted Campbell's motion, ruling that she had paid taxes under color of title on the property for more than seven consecutive years under RCW 7.28.070 or RCW 7.28.080. We hold that because Campbell failed to establish color of title, RCW 7.28.070 and RCW 7.28.080 *421 do not apply. Accordingly, we reverse the summary judgment for Campbell; but because Campbell has established issues of material fact on her other claims, we hold that Reed is not entitled to summary judgment. We remand for further proceedings.

FACTS
¶ 2 Margaret Campbell and William G. Reed, Jr. own adjoining property lots abutting Discovery Bay in Port Townsend. The Campbell property is legally described as:
The westerly 100 feet of the easterly 500 feet of Government Lot 2, Section 35, Township 30 North, Range 2 West, W.M., together with tidelands of the second class abutting upon said parcel as conveyed by the State of Washington, in Jefferson County, Washington.
Clerk's Papers (CP) at 54.
¶ 3 The Reed property is described as:
The easterly 400 feet of the northeasterly 29 acres of the northeast quarter of the southwest quarter and the easterly 400 feet of Government Lot 2 in Section 35, Township 30 North, Range 2 West, W.M., together with [the] tidelands of the second class abutting upon said parcel as conveyed by the State of Washington, in Jefferson County, Washington.
CP at 54-55.
¶ 4 Concerned that some loggers might be encroaching on his property, Reed hired Ronald Nesary in 1992 to survey and set his boundaries. The survey showed that the loggers were working on the Gunstone property to the east of Reed's boundary. But Nesary also set Reed's common boundary with Campbell nearly 100 feet west of where Campbell had always believed it to be based on a 1945 survey by Harold Walker. The Walker and Nesary surveys conflicted because the surveyors used different methods to locate the north-south centerline of section 35.
¶ 5 Campbell's property is only 100 feet wide, and she knew that locating her boundary, with Reed 100 feet to the west, put her property almost entirely on the land her neighbor Edwin Flowers had improved and occupied for more than 10 years. Accordingly, Campbell knew that if the Nesary survey was correct, she had lost her property by adverse possession to Flowers.[1] Consequently, Campbell brought this action to quiet title to the property she believed she had always owned (the west 100 feet of Reed's property as surveyed by Nesary). She alleged alternative theories of (1) payment of taxes under color of title, (2) mutual recognition and acquiescence in a common boundary, and (3) adverse possession.
¶ 6 To ensure that the same survey would apply to both his east and west boundary lines, Reed joined Gunstone as a third party defendant. The trial court granted Gunstone's motion for a separate trial and ordered Campbell and Reed to proceed to trial "solely on the issue of which survey or survey methodology controls the location of both boundaries . . . at issue." CP at 54.
¶ 7 The trial court found that the Nesary survey was correct and controlled the locations of the Reed-Campbell boundary and the Reed-Gunstone boundary. In an unpublished opinion, we affirmed, holding that "the trial court's findings [were] supported by substantial evidence, and the conclusion that Nesary's survey should prevail [was] supported by the findings." Campbell v. Reed, No. 23603-6-II, 96 Wash.App. 1017, 1999 WL 429855 at *6, 1999 Wash.App. LEXIS 1154 at *21 (Wash.Ct.App. June 25, 1999). We remanded the case for further proceedings on Campbell's alternative title claims.
¶ 8 On remand, Campbell moved for summary judgment quieting title based on payment of taxes under color of title for more than seven consecutive years under RCW 7.28.070 or RCW 7.28.080. In support of her motion, Campbell submitted a declaration from Judith E. Morris, the Jefferson County Treasurer. Morris declared that "Tax Parcel No. 002-352-008 [the Campbell property] has been assessed and taxed as a separate parcel of land for more than 10 years prior to 1990 and the taxes have been paid on such parcel until 1997." CP at 120.
*422 ¶ 9 In addition, Campbell declared that "[f]rom 1972 until I sold the subject property to Steiner and Taylor, et al, in 1990, a period of at least 17 years, I was billed for and paid the real estate taxes on the subject property."[2] CP at 128. She also stated:
At the time of my conveyance of the property to Steiner, Taylor et al, the survey stakes placed in 1945 as a result of the Walker-Batcheller survey were clearly evident and present and had been present and evident based on my personal knowledge and familiarity with the property beginning in 1962 when my parents acquired the property and continuing to the present time.
CP at 129.
¶ 10 Peter Degroot, a surveyor, stated that his firm had recently surveyed the Campbell property. He testified that the Walker survey stakes at the southeast corner and northeast corner of "what was purportedly the Campbell property were evident and capable of being located at the time our field work was accomplished within the last several months." CP at 112. He also explained that along the "Flowers/Campbell boundary there were fence lines near the south end of the property, wood posts at various locations and a wire fence at the north end of the property." CP at 113.
¶ 11 Reed argued in part that RCW 7.28.070 and RCW 7.28.080 apply only to land legally described in a paper title and that Campbell has no paper title to the disputed 100 feet of property. Reed also argued that his payment of taxes on the same property, which his deed describes, nullifies any duplicate payment of taxes on that property by Campbell.
¶ 12 Reed also moved for summary judgment dismissing Campbell's boundary location claims based on (1) mutual recognition and acquiescence and (2) adverse possession. In his affidavit in support of his motion, Reed states, "I have never seen a fence or other potential boundary marker on or near the Discovery Bay Property other than the dilapidated barb wire fence that existed in 1973 near the eastern boundary of the property where it meets the Gunstone property." CP at 169.
¶ 13 The lower court granted Campbell's motion, ruling that she had obtained title to the disputed property by paying taxes on the property under color of title. Reed moved for reconsideration or, in the alternative, for leave to amend his third party complaint. With this motion, Reed submitted a declaration from Jack Westerman, the acting Jefferson County Assessor. Westerman stated,
Since the Assessor has assessed the owner of the Campbell property for what the Assessor believed to be the 100 feet of property due east of the property occupied by the owners of the Flowers/Carey property, and since the Assessor . . . believed to be the east 400 feet of Government Lot 2, it is now evident that there has been a double assessment of the west 100 feet of the east 400 feet of Government Lot 2 and that both Margaret Campbell and Wm. G. Reed, Jr. have been paying tax on the west 100 feet of the east 400 feet of Government Lot 2.
CP at 332.
¶ 14 The court denied Reed's motion for reconsideration but allowed him to amend the third party complaint.

ANALYSIS

I. Standard of Review
¶ 15 We review a summary judgment de novo. Ret. Pub. Employees Council of Wash. v. Charles, 148 Wash.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Charles, 148 Wash.2d at 612, 62 P.3d 470. In considering a summary judgment motion, we view the facts and all reasonable inferences from them in the light most favorable to the nonmoving party. Wagg v. *423 Estate of Dunham, 146 Wash.2d 63, 67, 42 P.3d 968 (2002); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).

II. Grant of Summary Judgment Quieting Title in Campbell
¶ 16 Reed argues that the trial court erred in granting quiet title to the disputed property based on payment of taxes under color of title in accordance with RCW 7.28.070 and/or RCW 7.28.080. He asserts that Campbell has no color of title to the disputed property because she has no paper title to it, and she has not paid any taxes "legally assessed" against the property. Br. of Appellant at 19.
¶ 17 Under RCW 7.28.070, one who possesses land under color of title and who pays legally assessed taxes for seven successive years may bring an adverse possession action at the end of the seven-year period.[3] The burden of proving each element of adverse possession is on the claimant. Hunt v. Matthews, 8 Wash.App. 233, 238, 505 P.2d 819 (1973), overruled on other grounds by Chaplin v. Sanders, 100 Wash.2d 853, 861, 676 P.2d 431 (1984).
¶ 18 Under RCW 7.28.080, a party who has color of title taken in good faith to vacant and unoccupied land, and who pays "all taxes legally assessed thereon for seven successive years" is deemed to be the legal owner of such land "to the extent and according to the purport of his or her paper title." But if any person "having a better paper title to said vacant and unoccupied land" pays the assessed taxes on the land for any one or more years during the seven-year period, the party with color of title will not be entitled to the benefit of RCW 7.28.080. RCW 7.28.080.
¶ 19 Reed maintains that Campbell does not have color of title to the disputed property because her legal description did not include the disputed property. Campbell responds that under Flint v. Long, 12 Wash. 342, 41 P. 49 (1895), her deed constituted color of title to the area staked on the ground by the Walker survey.

1. Color of Title

¶ 20 Color of title "means that the adverse claimant holds or traces back to a title document, usually a deed, that appears on its face to convey good title, but that, for some reason that does not appear on its face, did not convey title." WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 8.20, at 542 (2004); see also BLACK'S LAW DICTIONARY 283 (8th ed.2004) (defining color of title as a "written instrument or other evidence that appears to establish title but does not in fact do so"). An instrument that insufficiently describes the property does not provide color of title. Wingard v. Heinkel, 1 Wash.App. 822, 823-24, 464 P.2d 446 (1970) (citing Schmitz v. Klee, 103 Wash. 9, 173 P. 1026 (1918)); see also WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.20, at 543 (2004). To provide color of title, an instrument "`must purport to convey title to the grantee . . . and must describe . . . the land in controversy.'" Warner, 69 Wash.2d at 10, 416 P.2d 699. Further, "`it cannot be aided by parol evidence.'" Warner, 69 Wash.2d at 10, 416 P.2d 699 (quoting Klee, 103 Wash. at 16, 173 P. 1026; also quoting Heikkinen v. Hansen, 57 Wash.2d 840, 360 P.2d 147 (1961), in which the court said: "One may not claim property under color of title when the property is not described in the deed.").
¶ 21 The trial court relied on Flint for the proposition that "a deed to lands, which have been improperly surveyed, constitutes `color of title' to the land erroneously staked on the ground even though such *424 ground was not owned by the grantor." CP at 255.
¶ 22 In Flint, a landowner in good faith platted and staked out his property on the ground, not according to the description of his deeds, but to include the west 102 feet of five acres owned by the appellants. Flint, 12 Wash. at 345, 41 P. 49. The description in the paper plat, however, followed the description of the deeds and did not include the 102 feet in controversy. Flint, 12 Wash. at 345, 41 P. 49. The Flint court commented that "a deed to certain lots purporting to convey land actually staked out upon the face of the earth to correspond with the deed, would certainly be a purchase and an entry thereunder, if such entry was made in good faith." Flint, 12 Wash. at 346, 41 P. 49. But the court qualified this assertion, "[c]onceding the necessity under the provisions of our statute, to show color of title on the part of the respondent in this case,a question upon which we do not now pass,it seems to us that such color of title was fairly shown." Flint, 12 Wash. at 346, 41 P. 49 (emphasis added). The court did not "pass" on the color of title issue because it decided the case solely on the basis of the 10-year adverse possession statute. Flint, 12 Wash. at 346-47, 41 P. 49. Thus, Flint's statements about color of title are dicta and not controlling precedent. State v. Potter, 68 Wash.App. 134, 149 n. 7, 842 P.2d 481 (1992) (citing Bellevue v. Acrey, 103 Wash.2d 203, 207, 691 P.2d 957 (1984)).
¶ 23 Furthermore, any confusion that Flint generated about color of title was removed by Hesser v. Siepmann, 35 Wash. 14, 76 P. 295 (1904), a decision written nine years later by the same Justice, Scott J. Dunbar. In Hesser, the deeds in question conveyed all except the west 20 feet between the land granted and the street. Hesser, 35 Wash. at 15, 76 P. 295. The appellant and her grantors inquired about the lines and corners of the lot in question, and they were informed, and believed, that the land described in the two deeds included the west 20 feet of the lot. Hesser, 35 Wash. at 15-16, 76 P. 295. The Hesser appellant also alleged that for more than seven years she had actually paid all the taxes levied against the lot, including the west 20 feet and that those taxes were paid under claim of right and color of title. Hesser, 35 Wash. at 16, 76 P. 295. Accordingly, she argued that under the color of title statute,[4] she was the legal owner of the land including the west 20 feet. Hesser, 35 Wash. at 16-17, 76 P. 295. The court held that the color of title statute did not apply because her title clearly excepted the west 20 feet; thus, she did not have paper title to the disputed property. Hesser, 35 Wash. at 17, 76 P. 295. Nevertheless, the court held that she owned the land because of her actual, open, notorious, and adverse possession for more than 10 years. Hesser, 35 Wash. at 17, 76 P. 295.
¶ 24 More recent interpretations of RCW 7.28.070 and RCW 7.28.080 have followed Hesser. The rule from Heikkinen is commonly cited: "One may not claim property under color of title when the property is not described in the deed." Heikkinen, 57 Wash.2d at 844, 360 P.2d 147 (citing State v. Scott, 89 Wash. 63, 154 P. 165 (1916)); see also Gardenspot Ranch, Inc. v. Baker, 11 Wash.App. 109, 114, 521 P.2d 757 (1974); Finley v. Jordan, 8 Wash.App. 607, 609-10, 508 P.2d 636 (1973); Porter v. Temple Inv. Co., 4 Wash.App. 408, 409, 481 P.2d 582 (1971); Nicholas v. Cousins, 1 Wash.App. 133, 136, 459 P.2d 970 (1969).
¶ 25 Hesser and Heikkinen control here. Campbell's deed covers the west 100 feet of the east 500 feet of Government Lot 2. It does not describe any of the east 400 feet of Government Lot 2. That the land was staked improperly for a number of years does not affect the language of the deeds; they describe what they describe. And the language of the Campbell and Reed deeds is clear; the deeds do not describe overlapping property; they do not grant the same property twice; and Campbell's deed is not defective in any way. It conveys good title to 100 feet of land under the Nesary survey. Unfortunately *425 for Campbell, it is the land that Flowers has adversely possessed for more than 10 years.

2. Adverse Possession

¶ 26 Because the trial court ruled that Campbell was entitled to quiet title based on her color of title theory, it did not reach the merits of Reed's motion for summary judgment. Thus, it did not consider Campbell's alternative theories of ownershipadverse possession and mutual recognition and acquiescence. Because we review motions for summary judgment de novo, we must consider whether Reed is entitled to summary judgment. He is unless Campbell has shown that issues of material fact exist as to her remaining theories.
¶ 27 "Adverse possession . . . is a doctrine of repose; it says that at some point legal titles should be made to conform to appearances long maintained on the ground." WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 8.1, at 504 (2004). To establish adverse possession, the claimant must provide evidence that her possession was: (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. Chaplin, 100 Wash.2d at 857, 676 P.2d 431 (citing Peeples v. Port of Bellingham, 93 Wash.2d 766, 613 P.2d 1128 (1980)). Such possession must have existed for at least 10 years. Chaplin, 100 Wash.2d at 857, 676 P.2d 431 (citing RCW 4.16.020). Hostile possession does not require the claimant to show enmity or ill-will but only that she has possessed the land as owner, not as one who recognizes the true owner's rights. Chaplin, 100 Wash.2d at 858-59, 676 P.2d 431.
¶ 28 In his declaration, Flowers stated:
During the period of ownership of the property by Captain Lee and his wife and their daughter, Margaret Campbell, the owners visited the property on many occasions. Not only was their presence obvious but the results of their presence also was obvious. They constructed a road, cleared brush, cut firewood, all of which left a "mark" on the property.
CP at 229. He also stated:
The activities of the Lee[s] and the Campbell[s] and later the Taylor[s] and Steiner[s] and the results of their activities would make it clearly obvious that they were the owners of the property or at least believed themselves to be the owners of the property.
CP at 229. And finally, Flowers declared:
The boundaries of the "Campbell" property were very easily identified by the fence lines and surveyors . . . stakes and the road on the property, which was closer to the east side, and the clearing and brushing of the property all of which made it distinctly different than the adjoining property to the east.
CP at 230.
¶ 29 In her own declaration, Campbell said:
The photograph shows the road that was initially constructed, or caused to be constructed by my parents Rose and Oscar Lee in 1968, and which road was frequently used by my parents, myself and subsequently Taylor and Steiner after they acquired the property, and also which road was regularly maintained since its initial construction.
CP at 233.
¶ 30 Reed countered with:
The Discovery Bay Property is unenclosed, unimproved, unoccupied, and vacant land that is mostly covered with native growth. No one lives on the property now and no one lived on the property when I purchased it. The real estate tax assessments on the property disclose no improvements. . . on the property. I am also unaware of any monuments marking the boundaries of the property or any fence enclosing the property, in whole or in part, other than a dilapidated barb wire fence that existed in 1973 near the eastern boundary of the Discovery Bay Property where it meets the Gunstone Property.
CP at 167.
¶ 31 "[N]either actual occupation, cultivation or residence are [sic] necessary to constitute actual possession." Bellingham Bay Land Co. v. Dibble, 4 Wash. 764, 770, 31 P. 30 (1892); see also Grays Harbor Comm'l Co. v. McCulloch, 113 Wash. 203, *426 211, 193 P. 709 (1920). If a line of use is "obvious upon the ground" to "[p]rudent observation," adverse possession may exist up to a "reasonable projection" of that line. Frolund v. Frankland, 71 Wash.2d 812, 820, 431 P.2d 188 (1967), overruled on other grounds by Chaplin, 100 Wash.2d at 861, 676 P.2d 431; see also WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.9, at 519 (2004).
¶ 32 Campbell has presented sufficient evidence to create material issues of fact as to whether she had adversely possessed the disputed land for more than 10 years.
¶ 33 She has also presented sufficient evidence of her claim of mutual recognition and acquiescence in a common boundary. To prove a boundary line by recognition and acquiescence, the claimant must present evidence of the following elements:
(1) The line must be certain, well defined, and in some fashion physically designated upon the ground, e.g., by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.
Lamm v. McTighe, 72 Wash.2d 587, 592-93, 434 P.2d 565 (1967); Lloyd v. Montecucco, 83 Wash.App. 846, 855, 924 P.2d 927 (1996). A claimant to title by mutual recognition and acquiescence makes out a prima facie case where the adjoining parties in interest have demonstrated by their possessory actions the asserted line of division between them. Lamm, 72 Wash.2d at 593, 434 P.2d 565.
¶ 34 Campbell's affidavits contain evidence that the property boundaries as set by the Walker survey were physically designated on the ground; that Campbell and her neighbors used and improved their lands in ways that showed they mutually accepted the Walker lines; and that this acquiescing use continued for at least 10 years. Accordingly, Reed is not entitled to summary judgment.
¶ 35 We reverse the summary judgment for Campbell; we also hold that Reed is not entitled to summary judgment. We remand for further proceedings.
We concur: QUINN-BRINTNALL, C.J., and PENOYAR, J.
NOTES
[1] The Flowers property is the westerly 150 feet of the east 650 feet of Government Lot 2. The Flowers property was purchased by Thomas A. Carey in 1998.
[2] Steiner and Taylor are also plaintiffs. The complaint states that they own the property subject to Campbell's deed of trust.
[3] RCW 7.28.070 states:

Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section.
[4] At the time the statute read, "`every person having color of title made in good faith to vacant and unoccupied land, who shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title.'" Hesser, 35 Wash. at 17, 76 P. 295 (quoting § 5504, Bal.Code).