# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TIM THOMSON, an unmarried man, and DAN THOMSON, an unmarried man, | |
| Appellants, | No. 51995-0-II |
| v. | |
| R AND H FAMILY, LLC, a Washington State limited liability company, | UNPUBLISHED OPINION |
| Respondent. | |
| _____ | |
| BARRY THOMAS, | |
| Respondent, | |
| v. | |
| TIM THOMSON, an unmarried man, and DAN THOMSON, an unmarried man, | |
| Appellants. | |

GLASGOW, J.—After a bench trial, the trial court concluded that R and H Family LLC and Barry Thomas (hereinafter collectively referred to as R&H) had acquired two disputed tracts of land on Tim Thomson and Dan Thomson's property by adverse possession. Rayonier Forest Resources L.P. previously owned the Thomsons' property.

One tract, the "disputed farm area," was acquired by virtue of a fence that enclosed that area since R&H bought their neighboring property in the 1960s. Clerk's Papers (CP) at 21-22. The other tract, the "disputed triangle area," was acquired by virtue of a road that R&H built in the

1970s, which they used to feed cattle and reach another portion of their property. *Id.* The road cut off the disputed triangle from the rest of the Thomson/Rayonier property and would have been seen by a Rayonier employee during a 1981 survey. Shortly after that survey, R&H also built a fence along the north side of the road.

The Thomsons appeal the trial court's legal conclusion that R&H satisfied the elements of adverse possession. They first argue that RCW 7.28.085, which imposes a stricter standard for establishing adverse possession over forestland, should apply to defeat R&H's claims. They then argue that R&H's claims to both disputed areas did not satisfy the hostility element of adverse possession. Finally, they argue that R&H's use of the disputed triangle area was not open and notorious. Both sides request attorney fees associated with this appeal.

We affirm and award attorney fees to R&H as the prevailing party on appeal.

FACTS

This case concerns two disputed areas between two adjacent pieces of property along the Sol Duc River in Forks, Washington. R&H owns farmland along the river, while the Thomsons own forestland to the north and west of the farm. The Thomsons' forestland was previously owned by Rayonier.

The underlying facts, as found by the trial court, are not in dispute. Thomas's parents bought the R&H property in the 1960s. They conveyed one small parcel to Thomas in 1991 and the remaining parcels to R&H in 1998.[1] R&H is owned collectively by Thomas and his siblings. The Thomsons bought the Rayonier property in 2010 from Rayonier.

---

[1] Even though R&H Family LLC was not created until the late 1990s, we use R&H to refer to the Thomas family throughout this opinion for consistency.

When R&H bought their property, a fence enclosing a clearing on their property extended over the boundary line onto the Rayonier property. A "half-moon" shaped piece of land enclosed by R&H's fence but located on the Thomsons' side of the boundary is the "disputed farm area." Br. of Resp't. at 4; CP at 21-22.

The only access to the R&H property is via an extension to a county road that cuts through the Rayonier property, which R&H has used on a daily basis since the 1960s. In the late 1970s, R&H built an additional gravel road from the R&H property across the southeastern corner of the west side of Rayonier's property. The corner slice of land that is cut off from the rest of the Rayonier property by the gravel road is the "disputed triangle area." Br. of Resp't. at 5; CP at 22.

After the Thomsons bought the Rayonier property in 2010, they discovered that the disputed farm area, the disputed triangle area, and the extension road were within their property boundary. In 2016, they sued R&H to quiet title and eject them from those three areas. R&H brought counterclaims for adverse possession over the disputed farm area and disputed triangle area, as well as a claim for a prescriptive easement over the extension road.[2]

After a bench trial, the trial court entered the following undisputed findings of fact relevant to this appeal.

The disputed farm area has been enclosed by a fence since before R&H bought the property in the 1960s, and R&H has consistently maintained and repaired that fence ever since. In the late 1970s, R&H built the gravel road using gravel from their gravel pit. Since the construction of the gravel road, R&H has regularly used the gravel road for their farming operations.

---

[2] Access to the extension road is not an issue raised in this appeal.

In 1981, Gerry Keck, an employee of Rayonier, surveyed the Rayonier property, including the disputed farm and triangle areas. As part of this survey Keck blazed the property line, which involved physically walking and marking the property line. Keck would have had to cross the gravel road, which bisected the corner of the Rayonier property, creating the disputed triangle area. He would also have had to walk along the existing fence enclosing the disputed farm area.

In the early 1980s, after Keck's survey, R&H built a barbed wire fence beginning from the northwest corner of the farm east along the north boundary of the disputed triangle area and following the northern edge of the gravel road to connect to the historic fence enclosing the disputed farm area. R&H has maintained and repaired this fence since it was built.

In 1994, Rayonier logged its property north of the disputed triangle area and stopped at the fence line along the northern boundary of the disputed triangle area. At that time, Rayonier employees inspected the boundary line and would have seen the gravel road and the fences enclosing the disputed triangle area and disputed farm area.

Beginning in 1996, R&H granted permission for the Washington Department of Fish and Wildlife (Department) and later the Pacific Coast Salmon Coalition to study salmon habitat located partially within the disputed triangle area. The Department used the gravel road to access the research site.

In its conclusions of law, the trial court made several additional factual findings that are also not in dispute. The trial court found that R&H never asked for permission to use the disputed farm and triangle areas and that the fence along the road prevented others from using the disputed triangle area. It found that R&H used the road and the disputed triangle area for its farming

4

operations, and it also found that R&H's grant of access to the Department was "consistent with what a true owner would do." CP at 27.

The trial court concluded that R&H's use of the disputed areas satisfied each of the elements of adverse possession. Relevant to this appeal, it ruled that R&H's uses of the disputed farm and triangle areas were hostile because R&H never requested Rayonier's permission to use those areas or construct the road, and the fences enclosing each area excluded others from using them. The use of the disputed farm area was open and notorious based on the fencing and the trial court's finding that Keck would have walked past this area and seen the fencing in the early 1980s. The trial court also ruled that R&H's use of the disputed triangle area was open and notorious, noting that the presence of the road would have put Keck and Rayonier on inquiry notice of a possible adverse possession claim in 1981. Within its conclusions of law, the trial court explained that in the early 1980s, the Thomas family constructed a fence along the road, and R&H has since maintained the fence and used the area as a true owner would have.

The trial court concluded that the 10-year adverse possession period for the disputed farm and triangle areas began at least as early as 1981, when Rayonier had actual or constructive notice of R&H's claims, and vested at the latest in 1991. This timing was important because it meant that more onerous statutory standards under RCW 7.28.085 for adverse possession of forestlands did not apply.

The trial court quieted title to the disputed farm and triangle areas in R&H and granted a prescriptive easement to R&H over the extension road. The trial court also entered an award of attorney fees and costs to R&H under RCW 7.28.083(3).

5

The Thomsons appeal the trial court's ruling that R&H acquired the disputed farm and triangle areas through adverse possession, but they do not appeal the prescriptive easement over the extension road. In their assignments of error, the Thomsons do not challenge the trial court's findings of fact. They challenge the trial court's conclusion that Rayonier had constructive or "inquiry notice" of R&H's adverse possession claim. Am. Br. of Appellant at 14. In their assignments of error, they claim that (1) "[t]he trial court erred as a matter of law in concluding that R&H's possession of the [d]isputed [f]arm [a]rea was hostile," (2) "[t]he trial court erred as a matter of law in concluding that R&H's use of the road over the [public utility district] easement was open and notorious," (3) "[t]he trial court erred as a matter of law in concluding that R&H['s] use of the [d]isputed [t]riangle [a]rea was hostile possession," and (4) "[t]he trial court erred as a matter of law in concluding that RCW 7.28.085 does not apply." Am. Br. of Appellant at 7.

## ANALYSIS

### I. ADVERSE POSSESSION

"The doctrine of adverse possession permits a party to acquire legal title to another's land by possessing the property for at least 10 years in a manner that is '(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile.'" *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012) (quoting *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989)). Title vests automatically in the adverse possessor if all the elements are fulfilled throughout the 10-year period. *Id.* at 72. The party claiming adverse possession has the burden of proving each element by a preponderance of the evidence. *Teel v. Stading*, 155 Wn. App. 390, 393, 228 P.3d 1293 (2010).

A finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013). To the extent the Thomsons challenge any of the trial court's findings of fact contained in its conclusions of law, we review findings for substantial evidence. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012). Whether the facts as found establish the elements of adverse possession is a question of law, which we review de novo. *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 88, 173 P.3d 959 (2007).

A.      Application of RCW 7.28.085

RCW 7.28.085 provides a standard for proving adverse possession claims involving forestlands that is different from the traditional common law standard. Under that statute, the adverse claimant cannot establish open and notorious possession unless they establish by clear and convincing evidence that they "made or erected substantial improvements" that remained entirely or partially on the lands in question for at least 10 years. RCW 7.28.085(1). "'Substantial improvement' means a permanent or semipermanent structure or enclosure for which the costs of construction exceeded [$50,000]." RCW 7.28.085(3)(d). It is clear that, if the statute applies, R&H's claims over the disputed farm and triangle areas fail because they do not allege that the cost of constructing any structure or enclosure exceeded $50,000.

However, this statute does not apply to "any adverse claimant who, before June 11, 1998, acquired title to the lands in question by adverse possession under the law then in effect." RCW 7.28.085(4). In other words, the statute does not apply if all of the common law elements of adverse possession were established by June 11, 1988 and remained continuously for 10 years.

Thus, the validity of R&H's adverse possession claims depends on whether its use of the disputed farm and triangle areas met each of the elements of adverse possession prior to June 11, 1988 and continued for at least 10 years. If the adverse possession claim for each area accrued at least by June 11, 1988, then the statute does not apply. If the adverse possession claim did not accrue until later, for example, when Rayonier logged up to the fence in 1994, then the statute applies and defeats R&H's claim. As discussed below, we conclude that R&H's claims accrued at least as early as the early 1980s, so the statute does not apply.

B.     R&H's Use of the Disputed Areas Was Hostile

The Thomsons challenge the trial court's conclusion that R&H's use of the disputed farm and triangle areas was hostile. We disagree with regard to both areas.

The hostility element requires that the claimant treat the land as their own as against the world, throughout the 10-year period. *Ofuasia v. Smurr*, 198 Wn. App. 133, 144, 392 P.3d 1148 (2017). R&H, as the adverse claimant, bears the burden of proving hostility. *Happy Bunch*, 142 Wn. App. at 89. Permission from the true owner, express or implied, negates the hostility element because permissive use is inconsistent with making use of property as would a true owner. *Teel*, 155 Wn. App. at 394. The Thomsons argue that R&H's uses of the disputed farm and triangle areas were not hostile because those uses are presumed permissive. They cite to several prescriptive easement cases for the proposition that courts presume that when someone enters onto another's land, they do so "'with the true owner's permission and in subordination to the latter's title.'" Am. Br. of Appellant at 19 (quoting *Gamboa v. Clark*, 183 Wn.2d 38, 44, 348 P.3d 1214 (2015)).

8

Even if we assume that a presumption of permission applies, R&H presented sufficient evidence to overcome it. It is undisputed that neither Rayonier nor the Thomsons ever granted permission, and there is sufficient evidence that R&H's use of each disputed area was hostile.

1. The disputed farm area

The Thomsons argue that R&H's claim of the disputed farm area does not satisfy the hostility element because there is a "'reasonable inference of neighborly sufferance or acquiescence.'" *Id.* at 19-20 (quoting *Gamboa*, 183 Wn.2d at 47). They cite to Rayonier's general policy that if an encroachment does not adversely affect its timber, it will permit the encroachment to continue. We disagree.

The decades-old fence that has enclosed the disputed farm area and cut it off from the rest of the Thomsons' property firmly establishes hostility. Fences are typical expressions of hostility, evidencing that an adverse possession claimant is treating the land inside the fence as their own. *Ofuasia*, 198 Wn. App. at 144. A fence may be dispositive evidence of hostile possession where it "'purports to be a line fence, rather than a random one, and when it is effective in excluding an abutting owner from the unused part of a tract otherwise generally in use, it constitutes prima facie evidence of hostile possession up to the fence.'" *Id.* (quoting *Acord v. Pettit*, 174 Wn. App. 95, 107-09, 302 P.3d 1265 (2013)). In the absence of evidence to the contrary, line fencing is even sufficient to support summary judgment concluding that the adverse possession was hostile. *Id.* at 146.

The trial court's unchallenged findings, which are verities on appeal, support its conclusion that R&H's use of the disputed farm area was hostile. R&H has maintained the fence line since it

9

purchased its property in the 1960s, R&H never sought or received permission from Rayonier to enclose or otherwise use the disputed farm area and, in fact, the fence effectively excluded others.

We hold that the trial court did not err in concluding that R&H's use of the disputed farm area was hostile. Because this is the only element in dispute with regard to the disputed farm area on appeal,[3] we affirm the trial court's conclusion that R&H has established its adverse possession claim over that area.

2. The disputed triangle area

The Thomsons likewise argue R&H's claim of the disputed triangle area does not satisfy the hostility element because use of "'vacant, open, unenclosed, and unimproved'" property is presumed permissive. Am. Br. of Appellant at 19 (quoting *Granite Beach Holdings, LLC v. Dep't of Nat. Res.*, 103 Wn. App. 186, 200, 11 P.3d 847 (2000)). Even assuming a presumption of permission, the trial court's unchallenged findings establish that R&H's use was indeed hostile because they treated the disputed triangle area as their own such that any reasonable person would have thought they owned it and they interfered with Rayonier's and the Thomsons' use of the disputed triangle.

R&H built and maintained a gravel road that serviced only their property and not the Rayonier property, they fenced the northern side of it, and they consistently used the road to access the lower part of their property and to feed cattle along the road. In particular, the construction of a fence along the north side of the road in the early 1980s established hostile possession because

---

[3] Unlike the disputed triangle area, the Thomsons do not dispute that R&H's use of the disputed farm area was open and notorious. Even if they did, R&H's use of that area was open and notorious because the area was enclosed by a barbed wire fence since the 1960s, visible in aerial photographs since 1971, and would have been seen by Keck during his survey in 1981.

it set a boundary and effectively excluded Rayonier from the disputed triangle area. *See Ofuasia*, 198 Wn. App. at 144. The conclusion that R&H's use was hostile, rather than permissive, is further supported by the trial court's unchallenged finding embedded in its conclusions of law that R&H never asked for permission from Rayonier to build the road or to use it and the disputed triangle area for farming operations. Findings of fact mischaracterized as conclusions of law are treated as findings of fact on appeal, and because this finding is unchallenged, it is a verity. *Scott's Excavating*, 176 Wn. App. at 342; *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

The Thomsons also contend R&H's use was not hostile because it did not interfere with Rayonier's use because the disputed triangle area was off limits to logging as a wildlife conservation area. But the trial court found, embedded in its conclusions of law, that the fence along the road in fact excluded others from the disputed triangle area, and the Thomsons do not dispute this finding.

The absence of permission and the Thomsons' exclusion of all others from the disputed triangle area are sufficient to overcome any presumption of permissive use and establish that R&H treated the land as their own as against the world. *Ofuasia*, 198 Wn. App. at 144. We hold that R&H has established the hostility element with respect to the disputed triangle area.

We next consider whether R&H's use of the triangle area was also open and notorious for 10 years beginning at least as early as 1988.

11

C.      R&H's Use of the Disputed Triangle Area Was Open and Notorious

The Thomsons argue that R&H's use of the disputed triangle area did not satisfy the open and notorious element because Rayonier had neither actual nor constructive notice.   We conclude that Rayonier had constructive notice beginning at least by 1988.

The open and notorious element requires a showing of use consistent with ownership. *Acord*, 174 Wn. App. at 104.  The use and occupancy must be like that of a true owner, considering the land's nature and location.  *Id.*   A claimant can satisfy the open and notorious element by showing either that the title owner had actual notice of the adverse use throughout the 10-year period or that the claimant used the land such that any reasonable person would have thought they owned it. *Ofuasia*, 198 Wn. App. at 143-44.

In *Riley v. Andres*, we held that the open and notorious element was satisfied where the claimants planted flowers and maintained landscaping by watering and pruning plants, spreading beauty bark, and pulling weeds, and that those uses were typical for the land's nature and location. 107 Wn. App. 391, 397, 27 P.3d 618 (2001).   In *Acord*, the adverse claimants' use consisted primarily of cutting trees and firewood, which the court concluded would have conveyed ownership "consistent with the character and nature of the property" because it was forest property. 174 Wn. App. at 109.

Here, R&H's use was sufficient to put Rayonier on constructive notice because it used the land such that a reasonable person would have thought R&H owned it.  The trial court found that R&H built and consistently used the gravel road and built and maintained a fence enclosing the disputed triangle area, beginning before 1988.  It is undisputed that R&H used the disputed triangle area to feed cattle and to reach its connected farm property.

These unchallenged findings, which are verities on appeal, *Robel*, 148 Wn.2d at 42, satisfy the standard for constructive notice. These actions were consistent with those of a true owner and signaled to others that R&H was claiming the land enclosed by the fence and road. R&H's use was typical for the land's nature and location, as the triangle area is adjacent to R&H's farm and R&H used it to support its farming operations.

The Thomsons argue that, considering the nature of the land and the vastness of Rayonier's land holdings throughout Washington, R&H's use was not sufficient to put Rayonier on constructive notice of R&H's claim. The Thomsons cite to *Murray v. Bousquet*, 154 Wash. 42, 280 P. 935 (1929). In *Murray*, our Supreme Court held that use of the land for cattle grazing was not sufficiently open and notorious because the true owner was an absentee landlord and the land itself was "wild country, broken, mountainous, very sparsely settled, and a small portion of it might be taken and held for years without any one knowing whether there was a trespass or not." 154 Wash. at 49.

This case is distinguishable. Rayonier made two visits to the property, 12 years apart, so it is not as though it was incapable of inspecting the property on occasion. The landlord in *Murray*, on the other hand, was based in Chicago, had long leased the land to sheep herders, and had never once visited the area. *Id.* at 50. And the land in *Murray* was different from the land here. *Murray* involved a large valley in the Entiat Mountains, and "[f]ew people, other than hunters and sheep herders, visit[ed] the land." *Id.* Here, in contrast, the land is roughly three acres and is near the end of a county road, within the Forks city limits, and directly adjacent to property containing a residence where Barry Thomas lives full time.

This case is unlike other cases where the Supreme Court has declined to conclude possession was open and notorious. In *Downie v. City of Renton*, our Supreme Court stated that where there is no actual notice, the adverse use must be so open and notorious "as to warrant the inference that the owner must, or should, have known it." 167 Wash. 374, 379, 9 P.2d 372 (1932). There, the court held the element was not satisfied because the property was "unfenced, unused, and unimproved, a wild stretch of acreage almost as nature left it. [The true owner could not] have discovered by passing over the land any indication of adverse user." *Id.* The adverse use in question was the discharge of wastewater from the adverse user's neighboring reservoir, and there was nothing about the manner in which the reservoir was used that would alert the true owner, because the discharge occurred for only a couple of hours once a year. *Id.* at 379-80. Therefore, "nothing short of eternal vigilance on the part of [the true owner], who did not reside on the tract, would have served to bring to him knowledge of this surreptitious invasion of his property rights." *Id.* at 381.

Here, in contrast, had Rayonier returned at almost any time in the 12 years between Keck's survey and the beginning of its logging operations in 1993, it would have seen the fence R&H built and maintained along the gravel road to enclose the disputed triangle area. Unlike the once-a-year water discharge in *Downie*, the fence here was visible and obvious every day since it was constructed in the early 1980s. Eternal vigilance by Rayonier was not necessary; it would only have needed to return once to be made aware of R&H's claim.

In *Muench v. Oxley*, the adverse user's claim to dense, unimproved land failed because he relied on an old, dilapidated fence, heavily covered by trees and underbrush to establish open and notorious use. 90 Wn.2d 637, 642, 584 P.2d 939 (1978), *overruled on other grounds by Chaplin*

*v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984). Here, in contrast, R&H has maintained the fence since its construction and the fence is clearly visible to anyone who travels down the gravel road.[4]

In sum, we hold that R&H's actions, as described in the trial court's unchallenged findings, amounted to sufficiently open and notorious use to put Rayonier on constructive notice of R&H's claim over the disputed triangle area. R&H's use of the area to feed cattle during the winter months was consistent with the land's character, and R&H's construction of the fence, after Keck's 1981 survey but before RCW 7.28.085's cutoff date of June 11, 1988, taken together with R&H's construction of the gravel road in the 1970s, was sufficient to establish constructive notice because any reasonable person would have thought that R&H owned the land enclosed by the fence and road. Because it is undisputed that these actions began before 1988 and continued for over 10 years, R&H's claim vested before the effective date of RCW 7.28.085 and so that statute does not apply.

For these reasons, we hold that R&H has established its adverse possession claim over the disputed triangle area.

---

[4] Other western states' case law on adverse possession also shows that uses similar to R&H's would satisfy the open and notorious element even in the absence of actual notice. *See, e.g.*, *Nielsen v. Gibson*, 178 Cal. App. 4th 318, 328, 100 Cal. Rptr. 3d 335 (2009) ("When an adverse claimant is 'in open . . . possession . . . and the true owner fails to look after his interests and remains in ignorance of the claim, it is his own fault.'" (alterations in original) (internal quotation marks omitted) (quoting *Wood v. Davidson*, 62 Cal. App. 2d 885, 890, 145 P.2d 659 (1944))); *Slak v. Porter*, 128 Or. App. 274, 279, 875 P.3d 515 (1994) ("Construction of a fence . . . is recognized as a 'classic' example of the type of use that satisfies the requirement of open and notorious use."); *Alaska Nat'l Bank v. Linck*, 559 P.2d 1049, 1053 (1977) (notoriety element was satisfied because if the true owners had visited the property during the adverse possession period, they would have noticed evidence of an adverse claim, including a barricade erected by the adverse user to keep people from crossing the property).

## II. ATTORNEY FEES

Both parties request attorney fees on appeal. In an action asserting title to real property by adverse possession, RCW 7.28.083(3) authorizes an appellate court to award costs and reasonable attorney fees to the prevailing party "if, after considering all of the facts, the court determines such an award is equitable and just." *See also Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018). It is equitable and just in this case to award R&H attorney fees as the prevailing party. R&H did not bring the original lawsuit but counterclaimed only after the Thomsons sued, and R&H has successfully defended the trial court's conclusions of law on appeal. We accordingly award R&H attorney fees associated with this appeal in an amount to be determined by a commissioner of this court.

## CONCLUSION

We affirm and award attorney fees to R&H as the prevailing party on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Cruser, J.