# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DARLINGTON OFUASIA and ALENA OFUASIA, husband and wife, | No. 48145-6-II |
| Appellants/Cross-Respondents | |
| v. | |
| DANA WILLIAM SMURR, STEVEN and LORI LARSON, ROBERT MASON, and CHUCK MASON, | PUBLISHED OPINION |
| Respondents/Cross-Appellants. | |

MELNICK, J. — Darlington and Alena Ofuasia appeal the trial court's order granting Dana Smurr's motion for partial summary judgment to dismiss the Ofuasias' trespass claims. Smurr cross-appeals the trial court's order granting the Ofuasias' motion for partial summary judgment on their adverse possession claim. We affirm the trial court on the adverse possession claim, reverse on the trespass claims, and remand for further proceedings.

FACTS

I. BACKGROUND

The Ofuasias' and Smurr's properties are part of a residential subdivision that includes a private road, NE 65th Street. Smurr's property is located across the private road, north of the Ofuasias' property. The private road is a non-exclusive easement running east-west. It is subject to a road maintenance agreement that requires property owners to not block the easement or unreasonably interfere with its use. The west end of the easement includes a turn-around area that

borders the western boundary of the Ofuasias' property. The easement allows adjacent property owners to access and maintain the road.

In July 2005, the Ofuasias purchased their property from David Harris. Two years prior to the purchase, Harris built a chain link fence that ran along the property's western boundary. The fence encroached onto the turn-around area of the easement.

After the Ofuasias purchased the property, they built their house and landscaped the area between the west side of their garage and the chain link fence. Boulders were placed in front of the house near NE 65th Street as part of their landscaping efforts. They also planted arborvitae along the west side of their garage. Sometime thereafter, the Ofuasias removed a section of the chain link fence, from behind their garage to the property's southern boundary. They installed a wooden fence slightly east or "inside" of where the chain link fence had been. Clerk's Papers (CP) at 19. The Ofuasias left the metal posts from the chain link fence in the ground. They then removed the remaining chain link fence near their garage and arborvitae, leaving the metal fence posts. They continued to landscape and maintain the area up to the line created by the chain link fence.

II.    PROCEDURAL FACTS

A.    ARBITRATION

In April 2013, pursuant to the road maintenance agreement, Smurr initiated an arbitration action and sent the Ofuasias a statement of claim. The parties, without lawyers, arbitrated the dispute before three arbitrators. Smurr argued that the Ofuasias were in violation of the road maintenance agreement by installing boulders within the easement's boundaries and by installing a fence and planting shrubs within the turn-around area.

The arbitrators ruled that the boulders had to be removed and that the fence should be removed if encroachment was established by a proper survey paid for by Smurr. One of the arbitrators dissented from this conclusion, stating that the Ofuasias may own the property based on adverse possession because the wooden fence was built where the previous chain link fence existed. In response to an inquiry, one of the arbitrators sent an e-mail to the Ofuasias that clarified the decision. The e-mail stated that while removal of the boulders was required, the arbitrators did not require removal of the fence. It further explained that if Smurr obtained a survey and "the fence [was] in the right of way, then it MAY have to be removed, but, it may also be that adverse possession has occurred." CP at 150.

Approximately one week later, Smurr sent a letter to the Ofuasias informing them that he hired a surveyor and that the survey confirmed the true boundaries of the properties. Smurr wrote that, per the arbitrators' decision, once a survey confirmed the Ofuasias' west property boundary, they were required to remove any encumbrances they placed in the turn-around area. Smurr also stated that if the Ofuasias failed to remove the encumbrances within 30 days, he would remove them himself.

The Ofuasias hired a lawyer who wrote to the arbitrators, moving to change or clarify the arbitration decision pursuant to RCW 7.04A.200, .240. In their letter, the Ofuasias submitted that the evidence presented at arbitration established that the original fence was erected on or before January 23, 2003, and that they acquired the property at issue via adverse possession. Because the Ofuasias owned the property, they argued it was no longer subject to the road maintenance agreement. They also argued that, because the arbitrators' decision was incomplete as it referenced a survey which had not been completed, the arbitrators did not have authority to make a prospective

decision based on evidence that was not before them. The Ofuasias served the letter to Smurr by personal delivery.

Two days later, one of the arbitrators replied to the letter, clarifying their decision. The letter stated, in relevant part:

> There was evidence presented that the fence encroached into the "turn around" easement. Although the fence may have existed since 2003 *the issue of adverse possession was not fully developed*. We were unsure about the exact location of the property line. A survey would have been helpful to determine where the fence was actually located and our comment in that regard was *simply a suggestion*. We *did not intend to foreclose* the possibility that Mr. Ofuasia could <u>in a proper forum</u> plead and establish the necessary elements of adverse possession. The three arbitrators have communicated via email and concur with the above statements.

CP at 27 (underline in original) (emphasis added).

The Ofuasias then replied to Smurr's earlier letter. They stated that, through adverse possession, they acquired the land where the fence sat and the land inside the fence. They enclosed the arbitrator's letter that clarified the decision. The Ofuasias stated that they did not need to establish ownership of the land, but they had that remedy available to them if necessary. Should Smurr damage, destroy, or remove the fence, they warned that he would be committing trespass and may be held liable. One week later, Smurr removed the Ofuasias' fence and cut down the arborvitae trees.

B.    LAWSUIT

On August 13, the Ofuasias filed suit for statutory[1] and common law trespass and to quiet title. They alleged that they owned the land in dispute by adverse possession and that they were entitled to damages because of Smurr's interference and damage to their land, fence, trees, and landscaping. Smurr answered, arguing that, per the arbitrators' decision, he obtained a survey and

---

[1] RCW 4.24.630; RCW 64.12.030.

was permitted to remove the fence. He also asserted that the Ofuasias' claims were precluded because they were litigated to a final determination at arbitration.

The Ofuasias filed a motion for partial summary judgment regarding their adverse possession and trespass claims. Smurr responded to the motion, arguing that material issues of fact existed as to both claims, that the Ofuasias could not "tack" Harris' years of ownership to theirs, and that the Ofuasias could not meet the hostility element of adverse possession. CP at 115. He asserted that the Ofuasias moved out of their house for two and a half years and renters occupied their home during that time. He also asserted that Harris installed the chain link fence as a barrier to keep school children from crossing through the property, not as a boundary marker.

The trial court entered an order granting the Ofuasias' motion for partial summary judgment as to the adverse possession claim. The court found no disputed issues of material fact existed and that the Ofuasias established the elements of adverse possession regarding the tract of land at issue. The court also stated that the order was a final judgment on the Ofuasias' adverse possession claim. Regarding the trespass claims, the clerk's minutes stated, "Trespass motion was not ruled upon—denied at this time, Court advises parties may further address this issue . . . can submit a motion for reconsideration on this issue." CP at 124.

The Ofuasias moved for reconsideration on their trespass claims. They argued that Smurr did not deny he intentionally removed the fence, arborvitae, and landscaping, and he essentially conceded that if adverse possession was found, liability for trespass logically followed. Because the court found that they acquired the disputed property by adverse possession, the Ofuasias argued that there were no material issues of fact as to whether Smurr trespassed by removing their fence and arborvitae. The court denied the motion.

Smurr subsequently filed a motion for partial summary judgment to dismiss the Ofuasias' trespass claims. The trial court entered an order granting the motion.

The Ofuasias appeal the order granting Smurr's motion for partial summary judgment dismissing their trespass claims. Smurr cross-appeals, seeking review of the order granting the Ofuasias' partial summary judgment on their adverse possession claim.

ANALYSIS

I.     SUMMARY JUDGMENT STANDARD OF REVIEW

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Loeffelholz*, 175 Wn.2d at 271.

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 381, 46 P.3d 789 (2002). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe. R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). If the moving party satisfies its burden, the nonmoving party must set forth specific facts demonstrating that a material fact remains in dispute. *Loeffelholz*, 175 Wn.2d at 271. Conclusory statements of fact do not suffice. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 430, 38 P.3d 322 (2002).

6

Summary judgment is proper only if reasonable minds could reach but one conclusion from the evidence presented. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). We may affirm summary judgment on any grounds supported by the record. *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

II.     ADVERSE POSSESSION CLAIM

A.     THE ARBITRATION DECISION WAS NOT A FINAL JUDGMENT PRECLUDING THE
        OFUASIAS' ADVERSE POSSESSION CLAIM

Smurr argues that because the Ofuasias did not raise the issue of adverse possession at arbitration, and because the arbitrators' decision was final and binding, the principle of claim splitting or res judicata precluded them from pursuing their adverse possession claim. We disagree.

Filing two separate lawsuits based on the same event, or "claim splitting," is prohibited. *Ensley v. Pitcher*, 152 Wn. App. 891, 898, 222 P.3d 99 (2009). The doctrine of "res judicata" or claim preclusion, rests on the ground that a matter that has been litigated, or on which there was an opportunity to litigate in a prior action, should not be permitted to be litigated again. *Ensley*, 152 Wn. App. at 899. Res judicata bars claim splitting if the claims are based on the same cause of action. *Ensley*, 152 Wn. App. at 899.

The threshold requirement of res judicata is a final judgment on the merits in a prior suit. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Once the threshold requirement is met, res judicata requires the sameness of subject matter, cause of action, people and parties, and the quality of the persons for or against whom the claim is made. *Hisle*, 151 Wn.2d at 865-66. The party asserting defense of res judicata bears the burden of proof. *Hisle*, 151 Wn.2d at 865. Whether res judicata bars an action is a question of law we review de novo. *Ensley*, 152 Wn. App. at 899.

Here, the arbitrators' decision and their subsequent correspondence clearly show that they considered the adverse possession issue but did not make a final decision on it. The arbitrators' decision stated that the fence should be removed if a property survey established an encroachment. One of the arbitrators dissented from the conclusion "because adverse possession may have occurred" based on testimony confirming that the fence was built where the previous chain link fence existed. CP at 13. The post-decision letter from the arbitrators clarified the issue, stating that "the issue of adverse possession was not fully developed . . . [w]e did not intend to foreclose the possibility that Mr. Ofuasia could in a proper forum plead and establish the necessary elements of adverse possession." CP at 27.

Because the arbitrators' decision did not involve a final decision on the adverse possession claim, we conclude that res judicata does not bar the Ofuasias' adverse possession claim in their lawsuit.

B.  EVIDENCE PRESENTED AT SUMMARY JUDGMENT SATISFIED THE ELEMENTS OF ADVERSE POSSESSION

Smurr argues that the Ofuasias failed to establish the elements of an adverse possession claim because they owned the property for less than eight years at the time of arbitration, they did not provide evidence to show tacking with the predecessor-in-interest, and because they were absent from their home for two years. He argues that a genuine issue of material fact existed because removing the chain link fence was evidence that elements of adverse possession were no longer being met.[2] We disagree.

To establish a claim of adverse possession, the possession must be (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Nickell v. Southview Homeowners*

_____

[2] Smurr also argues that whether planting of arborvitae trees was sufficient evidence was not adequately developed. We need not address this argument because of our resolution of the issue.

*Ass'n*, 167 Wn. App. 42, 50, 271 P.3d 973 (2012). These elements must exist for ten years. *Nickell*, 167 Wn. App. at 50; RCW 4.16.020. A claimant can satisfy the open and notorious element by showing either that the title owner had actual notice of the adverse use throughout the statutory period or that the claimant, or predecessor-in-interest, used the land such that any reasonable person would have thought he owned it. *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001); *Shelton v. Strickland*, 106 Wn. App. 45, 51, 21 P.3d 1179 (2001). Hostility requires "'that the claimant treat the land as his own as against the world, throughout the statutory period.'" *Nickell*, 167 Wn. App. at 50 (quoting *Chaplin v. Sanders*, 100 Wn.2d 853, 860-61, 676 P.2d 431 (1984)). To interrupt adverse possession, there must be actual cessation of the possession. *Lingvall v. Bartmess*, 97 Wn. App. 245, 256, 982 P.2d 690 (1999).

Fences are typical expressions of hostility, evidencing that an adverse possession claimant is treating the land inside the fence "as [his] own as against the world." *Roy v. Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986). The existence of a fence may be dispositive evidence of hostile possession "'[w]here a fence purports to be a line fence, rather than a random one, and when it is effective in excluding an abutting owner from the unused part of a tract otherwise generally in use, it constitutes prima facie evidence of hostile possession up to the fence.'" *Acord v. Petit*, 174 Wn. App. 95, 107-09, 302 P.3d 1265 (2013) (quoting *Wood v. Nelson*, 57 Wn.2d 539, 541, 358 P.2d 312 (1961)). Trees have also been used to mark a property's boundary lines. *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 89-94, 173 P.3d 959 (2007).

"Tacking" periods of adverse possession with others is permitted if there is a reasonable connection between the successive occupants that will raise their claim of right above the status of wrongdoer or trespasser. *Shelton*, 106 Wn. App. at 52. Formal conveyance between the parties is not essential to establish such a connection. *Shelton*, 106 Wn. App. at 52-53.

9

Here, there was no issue of material fact as to the hostility requirement. Harris, the Ofuasias' predecessor-in-interest, installed a chain link fence in January 2003. The fence surrounded three sides of the property, including the west side of what is now the Ofuasias' house. The fence remained there, continuously, until Harris sold the property to the Ofuasias. While no evidence showed whether or not Harris occasionally maintained the property up to the fence line, nothing in the record suggests anything to the contrary. The fence was a line or boundary fence, not a random one, and excluded others from coming on to and using the property.

After Harris sold the property, the Ofuasias landscaped the area between their garage and the chain link fence. They planted a row of arborvitae along the fence on the west side of their garage. The evidence showed a clear demarcation between the landscaped yard and arborvitae and the turn-around area. Sometime thereafter, the Ofuasias took down part of the chain link fence in their backyard and they erected a new wooden fence slightly "inside" or east of where the chain link fence was. CP at 19. They then removed the remainder of the chain link fence near their garage, by the arborvitae. The metal posts from the chain link fence remained in the ground. The Ofuasias maintained the wooden fence, weeded, watered and trimmed the arborvitae, and continued to landscape up to the line created by the original chain link fence.

The evidence showed that the initial fencing purported to be a boundary fence and that the Ofuasias' possession and continued maintenance of the fence and surrounding area established tacking with Harris's possession of the property. The fencing was prima facie evidence of hostility and, in the absence of any other evidence, was sufficient to support summary judgment on the element. Smurr did not provide evidence or authority to establish the contrary.

Smurr argues that the Ofuasias' absence from their home when they rented it disrupted adverse possession of the disputed property. The evidence, however, showed that the Ofuasias

continuously maintained the area along the original line of the chain link fence. Smurr provided no evidence that the disputed property to the west was unattended or no longer held out as the Ofuasias' property. No evidence demonstrated actual cessation of the Ofuasias' possession.

Smurr also argues that Harris's construction of the fence cannot support adverse possession because Harris did not intend his fence to be a boundary marker. CP at 91. However, this argument is based only on Smurr's declaration, which lacks foundation and speculates what Harris intended. *Becker v. Wash. State Univ.*, 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011); CR 56(e). Therefore, it cannot create a question of fact regarding adverse use.

In addition, Smurr did not present evidence or authority showing that removal of approximately 30-feet of fencing, which was replaced by a row of arborvitae, established cessation of adverse possession. The uncontroverted evidence showed that the original chain link fence extended 80 feet, north to south, on the Ofuasias' property. The Ofuasias' new wooden fence only extended 48 feet, south to north, and the original fence posts remained in the ground.

Here, the arborvitae trees marked the property's boundary line. They, along with other landscaping, were on the original chain link fence line. The arborvitae made a clear demarcation between the Ofuasias' property and the turn-around area. The Ofuasias continuously maintained and landscaped the area up to the original fence line, weeding, watering, and trimming the arborvitae. The line of arborvitae trees enclosed the Ofuasias' property and they held the property out as their own.

We conclude that because no genuine issue of material fact existed, the trial court did not err in granting the Ofuasias' motion for partial summary judgment regarding the adverse possession claim.

III.     TRESPASS CLAIMS

The Ofuasias argue that the court erred in dismissing their statutory trespass claims because Smurr's actions were "wrongful" and without "lawful authority."  Br. of Appellant at 10.  They also argue that the court erred in dismissing their common law trespass claim because it had different elements from the statutory trespass claims.  Smurr argues that he acted with lawful authority because he obtained a survey showing he was within the boundaries of the turn-around area, and acted in accordance with the arbitrators' decision.  We conclude that the trial court erred when it dismissed the trespass claims because genuine issues of material fact existed.

A.     STATUTORY TRESPASS

The trespass statute, RCW 4.24.630(1), provides:

> Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, *a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.*

(Emphasis added).  "The statute establishes liability for three types of conduct occurring upon the land of another: (1) removing valuable property from the land, (2) *wrongfully* causing waste or injury to the land, and (3) *wrongfully* injuring personal property or real estate improvements on the land."  *Clipse v. Michels Pipeline Constr., Inc.*, 154 Wn. App. 573, 577-78, 225 P.3d 492 (2010).  The requirement that the defendant act "wrongfully" means that the defendant knew or had reason to know that he or she lacked authorization to act.  *Clipse*, 154 Wn. App. at 579-80.

The timber trespass statute, RCW 64.12.030, provides, in relevant part:

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree . . . timber, or shrub on the land of another person . . . *without lawful authority*, in an action by the person . . . against the person committing the

> trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

(Emphasis added). Where a person, with knowledge of a bona fide boundary dispute, intentionally enters the disputed area for purposes of destroying trees, and does destroy them, his acts are neither casual nor involuntary, nor justifiable on the basis of believed ownership, but are without lawful authority and will subject him to treble damages. *Maier v. Giske*, 154 Wn. App. 6, 21-22, 223 P.3d 1265 (2010) (citing *Mullally v. Parks*, 29 Wn.2d 899, 911, 190 P.2d 107 (1948)). Mere subjective belief in the right to cut the trees is not sufficient for mitigation of damages pursuant to RCW 64.12.040. *Happy Bunch*, 142 Wn. App. at 96.

Here, the evidence showed that Smurr removed the Ofuasias' fence after having the property surveyed. Although the arbitrators clarified that the issue of adverse possession was not fully developed, their original decision stated that Smurr may remove the fence if a survey showed the property's true boundary lines. Smurr argues that he relied on the survey, and removed the fence because the arbitrators' decision authorized him to do so.

However, title automatically vests in an adverse possession claimant when the requirements of adverse possession have been satisfied for 10 years. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 72, 283 P.3d 1082 (2012). The new title holder need not file suit to perfect his or her interest. *Gorman*, 175 Wn.2d at 74. As we ruled above, the Ofuasias satisfied the adverse possession requirements by 2013. Therefore, they had title to the disputed property when Smurr removed the fence. Given this fact, whether Smurr acted "wrongfully" constituted a genuine issue of material fact.

Another issue of material fact existed as to whether Smurr had knowledge of a bona fide boundary dispute and acted without lawful authority when he removed the arborvitae. As discussed above, there was a genuine issue of material fact as to whether or not Smurr knew a bona

13

fide boundary dispute existed. Further, the trial court's ruling that the Ofuasias acquired title of the contested property through adverse possession at least created a question of fact regarding their trespass claims. We, therefore, conclude that the trial court erred by dismissing the Ofuasias' statutory trespass claims because a genuine issue of material fact existed as to whether Smurr's actions were wrongful and done without lawful authority.

### B.     COMMON LAW TRESPASS

The Ofuasias argue that their common law trespass claim should not have been dismissed because even if Smurr mistakenly believed the Ofuasias did not own the disputed land, the undisputed facts show they established common law trespass. We conclude that the trial court erred in dismissing this claim because a genuine issue of material fact existed.

Intentional trespass occurs when there is "'(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages.'" *Grundy v. Brack Family Tr.*, 151 Wn. App. 557, 567, 213 P.3d 619 (2009) (quoting *Wallace v. Lewis County*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006)). The intent element may include an act that the actor undertakes realizing that there is a high probability of damage and disregarding the likely consequences. *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 683-84, 709 P.2d 782 (1985).

Here, the trial court heard evidence that the arbitrators' decision may not have given Smurr authority to remove the fence or arborvitae. The trial court also ruled that the Ofuasias adversely possessed the property in dispute. As with statutory trespass discussed above, this finding at least created a question of fact regarding the Ofuasias' common law trespass claim.

The Ofuasias also presented evidence that Smurr's entry on the Ofuasias' property and his cutting the arborvitae and fence may have been an intentional act that was reasonably foreseen to

disturb their possessory interest, causing actual and substantial damages. A genuine issue of material fact existed as to whether in relying on the survey and arbitrators' decision, Smurr could have reasonably foreseen that his act would disturb property in the Ofuasias' exclusive possession. Therefore, we conclude that the trial court erred by dismissing the Ofuasias' common law trespass claim.

IV.     ATTORNEY FEES

Smurr requests attorney fees pursuant to RAP 18.1. He argues that as the prevailing party, he is entitled to an attorney fee award on the statutory trespass clam.     Because there is no prevailing party on this claim, we do not award fees.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____
                            Melnick, J.

We concur:

_____
        Johanson, J.

_____
        Maxa, A.C.J.

15