**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| EDWARD PRAXEL and KATHLEEN PRAXEL, Husband and Wife, | No.  55072-5-II |
| Appellants, | |
| v. | |
| KELLY BAGNELL and GORDY BAGNELL, Husband and Wife, | UNPUBLISHED OPINION |
| Respondents, | |
| MARK HALL and LISA ROCK, | |
| Respondents. | |

LEE, C.J. — Edward and Kathleen Praxel appeal the superior court's order granting partial summary judgment in favor of Kelly and Gordy Bagnell[1] and dismissing the Praxels' adverse possession claim.  The Praxels argue that there was a genuine issue of material fact regarding hostile possession of the disputed property.  We disagree and affirm.

FACTS

Kelly owned property at 195 Camp Creek Road in Montesano, Washington.  Kelly lived at the property from 1991-2003.  Kelly purchased the property from her father, Richard Jacobs.

---

[1] We refer to the Praxels and Bagnells collectively by their last name.  When necessary to refer to individuals with the same last name, we use first names for clarity.  We intend no disrespect.

Jacobs lived on the adjacent property at 205 Camp Creek Road. In 1996, Jacobs erected a fence around 205 Camp Creek Road. After putting up the fence, Jacobs also constructed a windmill on the property. Jacobs lived at this property until his death.

The Praxels purchased 205 Camp Creek Road from Jacobs' estate in 2015. After the purchase, the Praxels had a survey conducted on the property. The survey showed that the fence was not the boundary line between Kelly's property and the Praxels' property, but was built on Kelly's property, creating an area of disputed property.

On August 4, 2016, the Praxels filed an action against the Bagnells to quiet title to the property through adverse possession. The complaint also sought damages resulting from damage the Bagnells caused to the fence and the property. The Bagnells filed an answer to the complaint, which included counterclaims for tortious interference with the sale of property, trespass, nuisance, and willful interference.

On June 2, 2017, the Bagnells filed a motion for partial summary judgment on the Praxels' adverse possession claim. The Bagnells argued that the Praxels' adverse possession claim must fail because Jacobs permissively used the Bagnells' property. The Praxels filed a response to the motion for partial summary judgment, arguing that Jacobs adversely possessed the disputed portion of the property since he built a fence around his property in 1996.

The Bagnells supported their motion for partial summary judgment, in part, by submitting Kelly's deposition. In the deposition, Kelly explained that she and Jacobs agreed on where to install the fence:

> We agreed on where [the fence] should sit just for aesthetic reasons, on where it will—you know, to square things up and so forth, and then he paid to have it put in.

2

Clerk's Papers (CP) at 72. Kelly also explained that the drain field for her house was on the other side of the fence. The drainfield had been installed prior to the fence being erected. Both Kelly and Jacobs maintained the disputed property. Kelly stated that she stained the fence and both she and Jacobs arranged for the property to be mowed. There was also a fire pit on the property that she and Jacobs used. Kelly admitted that she did not know the windmill was on her property until the Praxels' survey; however, she did know about the placement of the windmill and that the placement was just an estimate:

> When my dad had [the windmill] put in, he knew it was roughly—he thought he was right on the corner of the property line, so he knew he was close. But he just kind of walked it off.

CP at 83. The Praxels did not object to or move to strike any of Kelly's statements made in the deposition.

A superior court commissioner granted the Bagnells' motion for partial summary judgment. The commissioner found that there was no genuine issue of material fact that the relationship between Kelly and Jacobs was not adversarial and that the fence was erected by agreement. The commissioner quieted title in favor of the Bagnells.

The Praxels moved to revise the commissioner's order granting the Bagnells' motion for partial summary judgment. The superior court denied the motion to revise.

The Praxels then moved for summary judgment on the Bagnells' counterclaims. The superior court granted summary judgment on the Bagnells' tortious interference and nuisance claim. The superior court also granted summary judgment on a portion of the Bagnells' trespass claim. The Bagnells' then stipulated to dismissal of the unresolved portion of the trespass claim.

The Praxels appealed the superior court's order granting partial summary judgment in favor of the Bagnells and dismissing the Praxels' adverse possession claim. After the Praxels appealed, the Bagnells filed a motion to substitute parties because they sold their property to Mark Hall and Lisa Rock.[2] A commissioner of our court granted the Bagnells' motion to substitute parties.[3]

ANALYSIS

A. LEGAL PRINCIPLES

We review summary judgment orders de novo. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue. *Sartin*, 15 Wn. App. 2d at 172. We review all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id.*

The moving party "bears the initial burden to show there is no genuine issue of material fact." *Id.* The moving defendant can meet this burden by showing that the plaintiff cannot support their claim with any evidence. *Id.* The burden then "shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact." *Id.* If a plaintiff fails to put forth sufficient evidence to create a question of fact on an essential element that he or she will have the burden of proof at trial, then summary judgment is appropriate. *Id.*

---

[2] Mot. to Substitute Parties at 1 (Dec. 11, 2020).

[3] Ruling, (Dec. 14, 2020).

4

B.      KELLY'S STATEMENTS

The Praxels argue that the superior court should not have considered Kelly's statements because they violated the "Dead Man Statute," chapter RCW 5.60.030.[4] We do not reach this issue.

"If a party fails to object to an affidavit or bring a motion to strike improper portions of an affidavit, any error is waived." *Podbielancik v. LLP Mortg. Ltd.*, 191 Wn. App. 662, 666, 362 P.3d 1287 (2015); *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). Further, we consider only issues that are brought to the attention of the superior court on the motion for summary judgment. RAP 9.12.

Here, the Praxels did not move in the superior court to strike any of Kelly's statements in her deposition and raise the issue of Kelly's statements violating the Dead Man Statute for the first time on appeal. Because the Praxels did not move to strike Kelly's statements at the superior court, they have waived the argument that the superior court erred by considering Kelly's statements.

---

[4] RCW 5.60.030 provides:

> No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED, HOWEVER, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: PROVIDED FURTHER, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action.

Further, because the Praxels did not bring any issue regarding the Dead Man Statute to the attention of the superior court, we do not consider the issue on appeal. Accordingly, we do not consider the Praxels' challenge to the superior court's consideration of Kelly's statements.

C. SUMMARY JUDGMENT ON ADVERSE POSSESSION

The Praxels argue that there is a genuine issue of material fact regarding whether Jacobs' use of the land was hostile. We disagree.

Adverse possession is established when the possession is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Ofuasia v. Smurr*, 198 Wn. App. 133, 143, 392 P.3d 1148 (2017). "Hostility requires 'that the claimant treat the land as his own as against the world, throughout the statutory period.'" *Id.* at 144 (internal quotation marks omitted) (quoting *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 50, 271 P.3d 973, *review denied*, 174 Wn.2d 1018 (2012)). "Permission, express or implied, from the true owner negates the hostility element because permissive use is inconsistent with making use of property as would a true owner." *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010).

Generally, fences are expressions of hostile possession. *Ofuasia*, 198 Wn. App. at 144. The existence of a fence is prima facie evidence of hostile possession when the fence purports to be a boundary fence and the fence effectively excludes an abutting owner from the property. *Id.*

Here, Kelly stated that she and Jacobs agreed on where to put the fence. Because placement of the fence was done with Kelly's permission and agreement, the fence is not evidence of hostile possession of the property. Further, because Kelly stated that she helped to maintain the disputed area and that both she and Jacobs used the area, the fence did not effectively exclude Kelly from the property. Rather, Kelly's use of the disputed area highlights permissiveness. The Praxels do

6

not dispute any of these facts; instead, the Praxels rely on the existence of the fence itself to establish hostile possession. The mere presence of a fence based on this record does not create any genuine issues of material fact.

The Praxels also argue that the construction of the windmill on the disputed property is evidence of hostile possession. Although the windmill was constructed after the fence, Kelly was aware that Jacobs was constructing a windmill and knew that the placement of the windmill was based only on an estimate of the location of the property line because Jacobs just "walked it off" to estimate where the property line was before building the windmill. CP at 83. The Praxels do not dispute these facts. Therefore, there is no genuine issue of material fact regarding whether the windmill and its placement was with Kelly's permission; the mere construction of the windmill was not evidence of hostile use.

Because the Praxels cannot show that there is a genuine issue of material fact regarding Jacobs' hostile use of the disputed property, their adverse possession claim fails. Therefore, the superior court properly granted partial summary judgment to the Bagnells on the Praxels' adverse possession claim. Accordingly, we affirm.

D.      ATTORNEY FEES ON APPEAL

Hall and Rock request attorney fees on appeal under RAP 18.1 and RCW 7.28.083(3). We grant the request for attorney fees.

RAP 18.1(a) allows this court to award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 7.28.083(3) provides:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the

No. 55072-5-II

prevailing party if, after considering all the facts, the court determines such an
award is equitable and just.

RCW 7.28.083(3) allows an award of attorney fees on appeal. *See Neighbors v. King County*, 15
Wn. App. 2d 71, 91, 479 P.3d 724 (2020).

Here, Hall and Rock are the prevailing party on appeal and, therefore, are entitled to their
appellate attorney fees. Awarding attorney fees to Hall and Rock is just and equitable because
Hall and Rock had to defend against an appeal based primarily on a challenge to evidence that the
Praxels failed to move to strike at the superior court. Therefore, we grant Hall and Rock's request
for attorney fees on appeal.

We affirm and grant appellate attorney fees to Hall and Rock.

A majority of the panel having determined that this opinion will not be printed in the
Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,
it is so ordered.

Lee, C.J.

We concur:

Cruser, J.

Price, J.

8