IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID LARSON and TERESA LARSON, husband and wife, | ) ) ) | No. 38360-1-III |
| Respondents, | ) ) | |
| v. | ) | UNPUBLISHED OPINION |
| JASON H. WALTERS, a single individual, | ) ) ) ) | |
| Appellant. | ) | |

PENNELL, J. — Jason Walters appeals a judgment quieting title in favor of David and Teresa Larson and awarding the Larsons treble damages for injury to trees, along with attorney fees and costs. We affirm the trial court's judgment as to the quiet title action and treble damages, but reverse and remand for findings on the attorney fee award.

FACTS

In 1981, David and Teresa Larson purchased property in Walla Walla County, Washington. The property was bordered to the north and east by property owned by Halford and Roberta Miller. At the time of their purchase, the Larsons' property was enclosed by a barbed wire fence. Soon after the Larsons purchased the property, they began making improvements to the land up to the northern fence by planting vegetation and installing above-ground irrigation.

In 1996, the Larsons commissioned a land survey revealing an inconsistency between the surveyed boundary and existing fence lines. On the northern fence line, in the area they had been maintaining, the fence line was approximately 4.5 feet to the north of the surveyed line, resulting in a gain to the Larson property (Area One). Once the Larsons realized the boundary was off, they informed Roberta Miller, who stated, "not to worry about it." Report of Proceedings (RP) (May 17, 2021) at 81. The 1996 survey also indicated the surveyed boundary line and the fence line on the eastern boundary were inconsistent, but the discrepancy favored the Millers. After informing the Millers, the Larsons removed the fence on the eastern side of their land. The Larsons then began planting trees and shrubs, spraying for weeds, and placing above-ground sprinklers in an area to the east of the removed fence line (Area Two). The Larsons' activities in Area One and Area Two were viewable from the Millers' property and the Millers did not object.

In 1999, Jason Walters's grandfather, Jack Walters, purchased the Millers' property. That same year, Jack removed most of the northern fence line. Jack Walters passed away in 2009, leaving his property to his son James Walters. James pushed over the remainder of the northern fence line in an attempt to prevent water from flooding his

property. During this period, no objections were made to the Larsons' activities in Area One or Area Two.

In 2012, Mr. Larson again commissioned a survey of the property. The survey identified the northern boundary of the Larson property consistent with that of the 1996 survey. The survey indicated where the fences had been in 1996, but noted that "there is no evidence of the prior fence along the Larson's north line." Clerk's Papers (CP) at 477 (some capitalization omitted). This survey was recorded.

James Walters died in 2014 and Jason Walters inherited the family property in 2016. The relationship between Jason Walters and the Larsons has been strained. The Larsons reported Jason to the authorities for illegal burning and discharge of firearms. They also alleged Jason trespassed onto their property and destroyed vegetation and trees.

In December 2016, the Larsons initiated an action in Walla Walla County Superior Court seeking to quiet title to Area One by reason of adverse possession and/or mutual acquiescence, and for trespass, ejectment, and damages. The Larsons later amended their complaint to include the claim they had adversely possessed Area Two. In his answer and affirmative defenses to the amended complaint, Jason Walters asserted the statute of limitations barred the Larsons' suit, denied knowledge of the northern fence, and sought

declaratory judgment acknowledging no such fence existed and that Jason Walters was the rightful owner of the two disputed areas.

Following a bench trial, the trial court quieted title in favor of the Larsons on alternate theories of mutual recognition and adverse possession. The court ejected Jason Walters from the property subject to the quiet title and found Mr. Walters wrongfully removed and damaged trees and other vegetation on the Larsons' property. The trial court awarded the Larsons treble damages in the amount of $151,599.30 and also granted the Larsons an award of attorney fees and costs.

Jason Walters has filed a timely appeal.

ANALYSIS

This case centers around a claim of adverse possession. We therefore provide a brief overview of Washington's law on adverse possession before addressing the parties' contentions.

"'Adverse possession . . . is a doctrine of repose; it says that at some point legal titles should be made to conform to appearances long maintained on the ground.'" *Campbell v. Reed*, 134 Wn. App. 349, 361, 139 P.3d 419 (2006) (*quoting* WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 8.1, at 504 (2d ed. 2004)). The doctrine permits "a party to acquire legal title to

another's land by possessing the property for at least 10 years in a manner that is

'(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile.'"

*Gorman v. City of Woodinville*, 175 Wn.2d 68, 71-72, 283 P.3d 1082 (2012) (quoting

*ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989)). "Hostile possession

does not require the claimant to show enmity or ill-will only that [they have] possessed

the land as owner, not as one who recognizes the true owner's rights." *Campbell*, 134

Wn. App. at 361.

"Title vests automatically in the adverse possessor if all the elements are fulfilled

throughout the statutory period." *Gorman*, 175 Wn.2d at 72. "Once perfected, adverse

possession title is legal title, though not paper title . . . . The adverse possessor may obtain

paper title in the form of a court judgment that [they have] acquired title." 17 STOEBUCK

& WEAVER, *supra*, § 8.6, at 514. "Because adverse possession is outside the recording

acts, it does not need to be recorded: there is nothing to record." *Id.*

*Statute of limitations*

Jason Walters argues the Larsons' suit is time barred by the statute of limitations

for adverse possession claims under RCW 4.16.020(1). Mr. Walters also argues that he

adversely repossessed the areas in dispute under RCW 7.28.050 and RCW 7.28.070.

The Larsons raise legitimate concerns regarding whether Mr. Walters's arguments have been preserved for appeal. Nevertheless, Mr. Walters's contentions fail on the merits.

*RCW 4.16.020(1)*

RCW 4.16.020(1) is the principal statute of limitation governing adverse possession. This statute provides that an action for recovery of land adversely possessed by another must be commenced within 10 years from the date the adverse possession began. But once a 10-year period of adverse possession is complete, original title is extinguished and title automatically vests in the adverse possessor. *Ofuasia v. Smurr*, 198 Wn. App. 133, 148, 392 P.3d 1148 (2017). No legal action is necessary to perfect title. *Id*. A party acquiring land through adverse possession may file a quiet title action to obtain paper title, but quiet title actions are not subject to a statute of limitations. *Petersen v. Schafer*, 42 Wn. App. 281, 284, 709 P.2d 813 (1985).

Mr. Walters appears to claim that the Larsons cannot bring an adverse possession claim because they did not do so within 10 years from when the adverse possession began. This argument flips adverse possession on its head. The 10-year period for relief applies to the party challenging adverse possession (here, Mr. Walters), not to the adverse possessors (here, the Larsons). As found by the trial court, the Larsons acquired title to Area One and Area Two via adverse possession in 1995 and 2006, respectively. These

dates mark the end of the 10-year limitation for challenging the Larsons' adverse

possession. Because neither Mr. Walters nor his predecessors in interest brought an action

against the Larsons prior to 1995 and 2006, title automatically vested with the Larsons.

The Larsons' quiet title action was not subject to a statute of limitations defense.

   *RCW 7.28.050 and RCW 7.28.070*

   Mr. Walters argues that regardless of whether the Larsons acquired Area One and

Area Two by adverse possession, he re-obtained the property through his own actions of

adverse possession pursuant to RCW 7.28.050 and RCW 7.28.070. We disagree.

   RCW 7.28.050 and RCW 7.28.070 reduce the 10-year statute of limitation period

to 7 years for an adverse possessor who possesses property under connected title or color

of title and has paid applicable taxes. These two statutes do not operate independent of

the four standard elements of adverse possession cited above in *Gorman.* 175 Wn.2d at

71-72. Neither statute entitles a claimant to adverse possession without also proving the

four standard elements. *See Moon v. Tumwater Paper Mills Co.*, 157 Wash. 453, 455,

289 P. 24 (1930) ("A necessary element is actual, open, and notorious possession of the

land for seven successive years.").

   Mr. Walters and his predecessors may have paid taxes on the disputed properties

and held colorable paper title. However, Mr. Walters has never asserted nor proved the

other necessary elements of adverse possession. Mr. Walters was not entitled to judgment in his favor under RCW 7.28.050 or RCW 7.28.070.

*Evidentiary issues*

Mr. Walters claims two evidentiary errors undermined the trial court's factual findings. First, Mr. Walters contends the trial court should not have admitted the 1996 land survey because it was not recorded. Second, he claims the trial court improperly relied on Ms. Miller's comment that Mr. Larson should not worry about the 1996 land survey and the parties' fence line.

We decline to review Mr. Walters's evidentiary claims as they are not properly preserved. *See* RAP 2.5(a). At trial, no objection was made to introduction of the 1996 land survey. And while there were some objections to Mrs. Miller's comments, Mr. Walters affirmatively introduced her statement during cross-examination of Mr. Larson. Given these circumstances, Mr. Walters waived review of any evidentiary error. *State v. Finch*, 137 Wn.2d 792, 819, 975 P.2d 967 (1999) (plurality opinion) (lack of evidentiary objection waives argument on appeal).

*Sufficiency evidence*

Mr. Walters appears to claim that the trial court's decision was not supported by substantial evidence because the Larsons' use of the disputed areas was not open and

notorious during the time that he lived on the property.

Mr. Walters's argument rests on a misunderstanding of the time period relevant to adverse possession. The trial court concluded the Larsons acquired title to Area One and Area Two via adverse possession in 1995 and 2006, respectively. This was before Jason Walters inherited the family property. Thus, it is irrelevant whether the Larsons met the requirements for adverse possession during the time period that Mr. Walters lived on the property. Sufficient evidence supports the trial court's findings with respect to adverse possession.

*Treble damages*

Part of the Larsons' requested relief in the quiet title action was treble damages under RCW 64.12.030 based on the removal of trees and shrubs from their land by Mr. Walters.

RCW 64.12.030 allows for treble damages in a timber trespass action "[w]henever any person shall cut down, girdle, or otherwise injure, or carry off any tree, . . . timber, or shrub on the land of another person . . . without lawful authority." Mitigating circumstances can reduce treble damages to single damages if the trespass "was casual or involuntary, or that the defendant had probable cause to believe the land on which such trespass was committed was his or her own." RCW 64.12.040.

9

Mr. Walters claims the trial court erroneously imposed treble damages because he reasonably believed he had ownership of the two disputed areas. Mr. Walters also denies that he ever went onto the Larsons' property beyond the two disputed areas in order to remove trees or vegetation.

Mr. Walters's challenges to the trial court's imposition of treble damages fail. The Larsons did not seek trespass damages for trees removed from the two disputed areas. During trial, the Larsons repeatedly clarified that they were seeking damages only for tree damage on their surveyed property. Furthermore, while the evidence at trial was contested, testimony from Mr. and Mrs. Larson indicated Mr. Walters had come onto the Larsons' surveyed property to remove trees and vegetation. The trial court was entitled to rely on this testimony. *See State v. Thomas,* 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

While Mr. Walters has not articulated a valid objection to the trial court's award of treble damages, the Larsons' proof in support of the amount of treble damages is concerning. The Larsons submitted two invoices, documenting over $50,000 in repair costs to their property. Only one of the two invoices specified that the repair costs pertained to the Larsons' surveyed property—i.e., not the property within the two

disputed areas. In addition, the invoice that pertained to the Larsons' surveyed property included costs for items such as fencing that appear to be unrelated to a claim for trespass damage to timber under RCW 64.12.030. *See Nystrand v. O'Malley*, 60 Wn.2d 792, 796, 375 P.2d 863 (1962) (Treble damages are "strictly limited to damages resulting from the cutting or destruction of trees, timber or shrubs," not other property damage.). It appears that the Larsons' claim for trespass to timber may have been overstated. Nevertheless, Mr. Walters has not assigned error to this issue. The trial court's imposition of damages must therefore stand.

*Mutual acquiescence*

Mr. Walters challenges the trial court's alternate finding that the Larsons acquired ownership of Area One by reason of the doctrine of mutual recognition. Because we affirm the trial court's disposition as to adverse possession, we need not review this claim.

*Attorney fee and cost award*

RCW 7.28.083(3) allows for an award of attorney fees and costs in an adverse possession action. The trial court awarded fees and costs under this provision. On appeal, Mr. Walters claims the trial court's fee award was not supported by adequate findings. We review a fee award for abuse of discretion. *Chuong Van Pham v. Seattle City Light*,

159 Wn.2d 527, 538, 151 P.3d 976 (2007). We agree with Mr. Walters that the trial court abused its discretion in failing to justify its fee award.

The lodestar method is the applicable method for determining statutory attorney fees. *Mahler v. Szucs,* 135 Wn.2d 398, 433, 957 P.2d 632 (1998). This method involves analyzing the reasonableness of counsel's time spent in securing a successful recovery for the client. *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn. App. 229, 282, 215 P.3d 990 (2009). "Courts must take an *active* role in assessing the reasonableness of fee awards" and "should not simply accept unquestioningly fee affidavits from counsel." *Mahler,* 135 Wn.2d at 434-35 (citing *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 744, 733 P.2d 208 (1987)). Findings of fact and conclusions of law are required to justify an attorney fee award under the lodestar method. *Mahler,* 135 Wn.2d at 435; *Bentzen v. Demmons,* 68 Wn. App. 339, 350, 842 P.2d 1015 (1993) (Specific findings of fact under the lodestar method are required to support a conclusion that the fees are reasonable.).

The trial court made the following two findings in support of its attorney fee and cost award:

> 49. Plaintiff's attorney's fees in the amount of $28,271.00 and costs in the amount of $758.43 charged by Hawkins Law, PLLC are found to be reasonable and are approved.
> 50. Plaintiff's attorney's fees in the amount of $12,800.00 and costs in the amount of $25.00 charged by Minnick-Hayner are found to be reasonable and are approved.

CP at 446.

The foregoing findings are inadequate. They are entirely conclusory, fail to acknowledge the lodestar methodology, and do not demonstrate an active and independent assessment of the reasonableness of the fees charged. This type of generalized fee award cannot be sustained on appeal. *See Deep Water Brewing*, 152 Wn. App. at 284-85. We reverse the fee award and remand for new findings. *Mahler,* 135 Wn.2d at 435; *see Chuong Van Pham,* 159 Wn.2d at 539-40.

*Miscellaneous assignments of error*

The table of contents to Mr. Walters's opening brief contains additional assignments of error. However, those assignments are not developed in the body of the brief and therefore do not merit consideration. *State v. Johnson,* 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

APPELLATE ATTORNEY FEES

Both parties request an award of attorney fees on appeal under RCW 7.28.083(3). We decline to award fees. Mr. Walters is not entitled to an award of fees as he has not prevailed on a claim of adverse possession. Although we have discretion to award fees to the Larsons, we decline to do so, particularly in light of the Larsons' sizeable treble damage award.

No. 38360-1-III
*Larson v. Walters*

CONCLUSION

The trial court's award of attorney fees is reversed and remanded for findings and conclusions. The judgment is otherwise affirmed. Each party shall bear its own attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

14